**Ramon RUIZ–ROCHE,**
**Plaintiff, Appellant,**

**v.**

**Miguel D. LAUSELL, etc., et al.,**
**Defendants, Appellees.**

No. 87–1984.

United States Court of Appeals,
First Circuit.

Heard May 6, 1988.
Decided May 27, 1988.

Jose Ramon Perez Hernandez, San Juan, P.R., with whom Jorge A. Pierluissi, Hato Rey, P.R., was on brief, for plaintiff, appellant.

Zuleika Llovet, San Juan, P.R., with whom Saldana, Rey, Moran & Alvarado, Santurce, P.R., Hector Rivera–Cruz, Secretary of Justice, and Rafael Ortiz–Carrion, Sol. Gen., were on brief, for defendant, appellee Miguel D. Lausell.

Jay A. Garcia–Gregory, San Juan, P.R., with whom Carlos Lugo Fiol, Santurce, P.R., was on brief, for defendant, appellee Puerto Rico Telephone Co.

Before CAMPBELL, Chief Judge, and BOWNES and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

Plaintiff-appellant Ramon Ruiz Roche was fired from his job as legal counsel to the Puerto Rico Telephone Company ("PRTC"). He brought suit under 42 U.S. C. § 1983 (1982) for injunctive relief and damages, arguing, inter alia, that his firing violated the First Amendment (it was politically motivated) and the Due Process Clause of the Fourteenth Amendment (he was not given a hearing). The phone company and its President, Miguel D. Lausell, were named as defendants, Lausell in both his individual and official capacities. The district court granted summary judgment for both defendants, 665 F.Supp. 99. Ruiz Roche appeals only from the judgment on his due process claim.[1]

Appellant was hired by the PRTC on April 13, 1981. His position was "Executive Assistant and Legal Counsel." Although the title of his job changed over the next two years, to "Group Director, Legal and Security" and then to "General Counsel," it is undisputed that his actual duties remained essentially the same throughout his tenure at PRTC. These included such important matters as supervising PRTC litigation and providing company management with interpretations of administrative rules.

When appellant was hired, PRTC was incorporated under the laws of Delaware, as any private corporation might have been, but it was operated, and all its stock was owned, by the Puerto Rico Telephone Authority, a public corporation of the Commonwealth. PRTC functioned, at least with respect to its personnel policies, as if it were a purely private corporation, outside the coverage of the Commonwealth's civil service laws. See P.R. Laws Ann. tit. 3, §§ 1301 et seq. (1978). Under PRTC's internal personnel policies there were three categories of employees: temporary, probationary, and regular. Regular employees could not be fired without just cause. Appellant became a regular employee three months after his April 1981 hiring.

Although private-public corporations such as PRTC are exempt from the letter of the civil service laws, they are still obligated to adopt personnel regulations embodying the "merit principle," the underlying theme of the civil service statute. P.R. Laws Ann. tit. 3, § 1338(4), (5) (1978). In June 1982, in *Torres Ponce v. Jimenez*, 113 D.P.R. 58 (1982), the Supreme Court of Puerto Rico disabused the PRTC of the notion that it could operate without any regard to the civil service laws. In *Torres Ponce*, a PRTC employee had been fired without a hearing, an action that was permissible under the pertinent PRTC personnel rules. The court found this PRTC practice inconsistent with the merit principle, however, and thus invalid. As evidence of inconsistency, the court cited a statutory provision requiring pre-termination hearings for all career employees, P.R. Laws Ann. tit. 3, § 1336(4). *Torres Ponce*, 113 D.P.R. 58 (Official Translation at 93–94).

---

1. Appellant does not now challenge the district court's conclusion that political affiliation was an appropriate requirement for his job, *see Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236 (1st Cir.1986) (en banc), *cert. denied,* — U.S. —, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987), and that he thus had no First Amendment protection from a politically motivated discharge.

The court vacated the dismissal and ordered a hearing. *Id.* at 94.

In response to *Torres Ponce*, the PRTC on April 4, 1983, approved a new set of personnel regulations, a regulatory scheme designed to reflect the merit principle. All company employees were categorized as either "regular managerial employees" or "confidence managerial employees," a reclassification parallel to the civil service statute's "career employees" and "confidential employees." P.R. Laws Ann. tit. 3, § 1349 (1978). Appellant's position, because of his important duties, was classified as a "confidence" position under these new regulations. Under both the new regulations and the civil service laws, confidence employees are freely dischargeable. Shortly after the 1984 election, Miguel D. Lausell, the newly appointed Director of the Telephone Authority (and President of the PRTC), dismissed appellant from all employment at PRTC. No hearing was held.

It is well-settled law that the property interests protected under the Due Process Clause of the Fourteenth Amendment are not engendered by the Constitution itself, but rather "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed. 2d 494 (1985) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). For Ruiz Roche to prevail on his due process claim, then, he must first show that under Puerto Rico law he has a property interest in his job at PRTC.

Appellant argues that his status as a "regular managerial employee" at PRTC *prior* to the *Torres Ponce* decision and the subsequent adoption of the 1983 personnel regulations gave him an expectation of continued employment there, *i.e.*, a protected property interest. *See Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.

2d 570 (1972). In other words, the "source" of appellant's property interest is the pre-*Torres Ponce* PRTC personnel rules. The court in *Torres Ponce*, however, ruled that internal PRTC personnel regulations had legal validity only to the extent they incorporated the "merit principle." *See Torres Ponce*, 113 D.P.R. 85 (Official English Translation at 92–94). As a matter of Puerto Rico law, therefore, appellant had a property interest only if the personnel regulation from which he claims the interest originated is consistent with the merit principle.

We think the district court could reach no conclusion other than that appellant's initial classification as a "regular managerial employee," dischargeable only for just cause, was inconsistent with the merit principle. One important aspect of the merit principle is the classification of employees into career employees and confidence employees. P.R. Laws Ann. tit. 3, § 1349; *Reyes Coreano v. Loubriel*, 110 D.P.R. 40 (Official English Translation at 69) (1980). Under the merit system, confidence employees are freely dischargeable, P.R. Laws Ann. tit. 3, § 1350 (1978), while career employees are entitled to a pre-termination hearing. *Id.* at § 1336(4). Appellant's duties prior to *Torres Ponce* were of a character such that, if the career/confidence classification had been in effect at the PRTC then, he would have been a confidence employee and thus freely dischargeable.[2] Appellant's "permanent" status under the pre-*Torres Ponce* regulations was thus inconsistent with the merit principle, and did not give him a property interest under Puerto Rico law as correctly applied.

Nor can we credit appellant's argument that the 1983 PRTC personnel regulations (the post-*Torres Ponce* regulations) gave him a cognizable interest in continued employment. He argues that Articles 10.2 and 14.15 of these regulations confer some sort of "permanent status" on "regular managerial employees." We reject this argument, however, as appellant

---

**2.** It is undisputed that appellant's classification as a confidence employee under the 1983 regulations was correct, and that his duties remained substantially the same throughout his entire tenure at PRTC.

concedes that under these new regulations he was classified not as a regular employee but as a confidence employee. Only slightly more plausible is appellant's claim that he was entitled to reinstatement at a career-level position under Article 5 of the new regulations.[3] Article 5 provides that any regular managerial employee appointed after October 14, 1975, who is promoted to a confidence position and subsequently removed therefrom, is entitled to reinstatement at a position at the level of the position he held when promoted. Again, appellant assumes that the Article's reference to regular employees includes employees such as him, who 1) are not classified as regular under the new regulations, and 2) never held such a position, except in name, under the old regulations. We think it rather obvious that Article 5 was meant to parallel section 1350 of the civil service statute, which provides a reinstatement right for employees who at one time held a career position as defined *under the merit principle*. Appellant never held such a job at PRTC.

Appellant also claims Lausell "promised" him that he would be reinstated at a career level position after his discharge. This promise, he contends, gave him a legitimate expectation of continued employment. In support of this argument appellant filed an affidavit stating "Mr. Lausell ... promised to make me an offer for a [career] position." In a deposition taken some months earlier, however, appellant had described the relevant conversation with Lausell with less certainty. According to this deposition testimony, Lausell "indicated to me that he would study the situation and that opportunely he would make some type of offer," and "he was going to try to see if he could use me in another function, that he would make me an offer."

These materials amount to an allegation either of a promise by Lausell to make appellant a job offer at some time in the future or of a promise to at least think about making such an offer. Such statements, read in the light most favorable to appellant, are insufficient under Puerto Rico law to give rise to a legitimate expectation of continued employment. Appellant's lone reference to the case law on this subject, *Lupianez v. Srio. de Instruccion*, 105 D.P.R. 696 (1977), is not to the contrary. In fact, *Lupianez* was distinguished by the Supreme Court of Puerto Rico in *Department of Natural Resources v. Enrique Correra*, No. CE–86–140 (P.R. Apr. 15, 1987), where the court responded as follows to an argument similar to appellant's:

> The offer of a career position was undoubtedly just a promise where no steps or measures were taken to effectively give him a permanent status. A simple offer of a permanent position without any action on the part of the government agency clearly showing an agreement to make good on the promise cannot, by itself, give respondent anything beyond a unilateral expectation of job retention.

*Id.* (Official English Translation at 8). We think this pronouncement fatally undermines appellant's argument. Appellant's only factual allegation regarding this theory of his property interest was the allegation of Lausell's naked—and vague—promise. This was not enough.

Since appellant did not have a property interest in his job, his summary discharge did not violate the Due Process Clause, as the district court properly held. Lausell was thus entitled to summary judgment in his individual capacity, for actions that do not violate the law *a fortiori* do not violate "clearly established" law. His qualified immunity defense was valid. Our conclusion that appellant's discharge was not constitutionally infirm makes it unnecessary for us to make such nice determinations as whether appellant's complaint properly made out an *Ex parte Young* action against Lausell in his official capacity, or whether the PRTC was an arm of the Com-

---

**3.** We give appellant the benefit of the doubt here, assuming he was arguing that denying him his reinstatement right without a hearing violated due process. We of course have no power to order reinstatement as a remedy for a purely state law violation. *Pennhurst State Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

monwealth such that the Eleventh Amendment barred suit against it. *See Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 400–02, 99 S.Ct. 1171, 1176–77, 59 L.Ed.2d 401 (1979); *Culebras Enterprises v. Rivera Rios*, 813 F.2d 506, 517 (1st Cir.1987).

*Affirmed.*