**Jorge CORREA–MARTINEZ,**
**Plaintiff, Appellant,**

v.

**Rene ARRILLAGA–BELENDEZ, et al.,**
**Defendants, Appellees.**

**No. 89–2011.**

United States Court of Appeals,
First Circuit.

Heard March 7, 1990.

Decided April 30, 1990.

Charles S. Hey Maestre, Rio Piedras, P.R., for plaintiff, appellant.

Zuleika Llovet, Hato Rey, P.R., with whom Hector Rivera–Cruz, Bayamon, P.R., Secretary of Justice, Jorge I. Perez–Diaz, Sol. Gen., John F. Nevares, and Saldana, Rey, Moran & Alvarado, Hato Rey, P.R., were on brief, for defendants, appellees.

Before BREYER, TORRUELLA and SELYA, Circuit Judges.

SELYA, Circuit Judge.

Invoking 42 U.S.C. § 1983 (1982), plaintiff-appellant Jorge Correa–Martinez (Correa) sued three jurists in federal district court. Asking that the judges be judged, Correa–Martinez alleged that he had been forced to resign from the judicial branch of Puerto Rico's government in violation of his due process and first amendment rights. The district court dismissed the action for failure to state a claim upon which relief could be granted. Fed.R. Civ.P. 12(b)(6). We affirm.

## I. BACKGROUND

In reviewing a Rule 12(b)(6) dismissal, we take the well-pleaded facts as they appear in the complaint, indulging every reasonable inference in plaintiff's favor. *See Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989); *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

The administrative arm of the Puerto Rico judicial system is formally known as the Office of Court Administration of the General Court of Justice (OCA).[1] There are two personnel classifications within the

---

1. The defendants, appellees before us, are Hon. Rene Arrillaga–Belendez, a superior court judge and OCA's administrative director; Hon. Luis A. Juan–Alvarez, a superior court judge and quondam administrator of the Guayama Judicial Region; and Hon. Victor M. Pons Nunez, the Chief Justice of Puerto Rico. The two superior court judges were sued in their official and personal capacities whereas Chief Justice Pons was sued only as the authority "ultimately responsible for administration" of the court system.

judicial branch, Uniform Service and Central Service. "Officers and employees of the Uniform Service may be suspended or dismissed only for just cause prior to the formulation of charges, and they shall have the right to defend themselves and be heard in the manner provided by law." P.R.Laws Ann. tit. 4, Appx. XIII, Reg. 16 (1978) (district court's translation). In contrast, "[o]fficers and employees of the Central Service, except judges, may be suspended or dismissed by the Nominating Authority in its discretion." *Id.*

Correa toiled in OCA's vineyards from 1981 through 1988. When originally hired, he received an engagement letter telling him that he was being named to a "trust" position in the Central Service.[2] The letter also warned that continued employment was dependent upon his "efficiency, attitude, availability and compliance with the regulations in effect." Although he started at a lower rank, Correa served for several years as Executive Director I, Guayama Judicial Region. He describes his functions as "essentially administrative in character." His performance evaluations were uniformly favorable and led to a number of merit-related pay increases.

Near the end of 1988, the halcyon days drew to a close. Judge Juan–Alvarez became the interim administrator of the Guayama Judicial Region and asked plaintiff to resign. Plaintiff complied. His resignation was officially accepted by Judge Arrillaga–Belendez. The complaint alleges that defendants did not afford Correa a hearing and gave no reason for forcing him to quit.

Plaintiff now attacks on two fronts. Contending that he possessed a "clear and substantial property interest" in continued employment at OCA, he maintains that his constructive discharge, unaccompanied by any hearing or explanation, violated procedural due process. Asserting simultaneously that the defendants cashiered him because of his close association with a for-

mer administrative judge, he maintains that his ouster ran afoul of the first amendment.

The district court found both offensives lacking in firepower and dismissed the complaint. The court ruled that Correa, as a trust employee in the Central Service, had no property interest in his position and could thus be fired in the employer's discretion without notice or hearing. The court also rejected the first amendment claim, stating that "[m]ere personal and political differences between the defendants and a third party ... cannot support the allegations of political discrimination against plaintiff." This appeal ensued.

## II. PRINCIPLES AFFECTING APPELLATE REVIEW

In the Rule 12(b)(6) milieu, an appellate court operates under the same constraints that bind the district court, that is, we may affirm a dismissal for failure to state a claim only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory. *Conley v. Gibson*, 355 U.S. 41, 45–48, 78 S.Ct. 99, 101–03, 2 L.Ed.2d 80 (1957); *Dartmouth Review*, 889 F.2d at 16. In making that critical determination, we accept plaintiff's well-pleaded factual averments and indulge every reasonable inference hospitable to his case. *Gooley*, 851 F.2d at 514.

■ In the menagerie of the Civil Rules, the tiger patrolling the courthouse gates is rather tame, but "not entirely ... toothless." *Dartmouth Review*, 889 F.2d at 16. Despite the highly deferential reading which we accord a litigant's complaint under Rule 12(b)(6), we need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation. *See Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987). Moreover, the rule

---

**2.** In Puerto Rico, "trust" positions ("de confianza") are noncareer positions which do not have the civil service protection accorded "career" positions ("de permanencia"). *See* P.R.Laws Ann. tit. 3, §§ 1349–51 (1978) (executive branch). "In contrast to a 'career' employee, an employee of 'trust' may, under Puerto Rico law, be discharged at will and without cause." *Rodriguez Rodriguez v. Munoz Munoz*, 808 F.2d 138, 140 (1st Cir.1986); *accord Ruiz–Roche v. Lausell*, 848 F.2d 5, 7 (1st Cir.1988).

does not entitle a plaintiff to rest on "subjective characterizations" or conclusory descriptions of "a general scenario which could be dominated by unpleaded facts." *Dewey v. Univ. of New Hampshire,* 694 F.2d 1, 3 (1st Cir.1982), *cert. denied,* 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983). We understand that, for pleading purposes, the dividing line between sufficient facts and insufficient conclusions "is often blurred." *Dartmouth Review,* 889 F.2d at 16. But the line must be plotted:

> It is only when such conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that 'conclusions' become 'facts' for pleading purposes.

*Id.*

■ There is another principle at work as well. We have frequently recognized that, in cases where civil rights violations are alleged, particular care is required to balance the liberality of the Civil Rules with the need to prevent abusive and unfair vexation of defendants. *See, e.g., id.; Dewey,* 694 F.2d at 3; *Slotnick v. Staviskey,* 560 F.2d 31, 33 (1st Cir.1977), *cert. denied,* 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978). A civil rights complaint must "outline facts sufficient to convey specific instances of unlawful discrimination." *Dartmouth Review,* 889 F.2d at 16. Put another way, a plaintiff may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus. The alleged facts must specifically identify the particular instance(s) of discriminatory treatment and, as a logical exercise, adequately support the thesis that the discrimination was unlawful. *See Dartmouth Review,* 889 F.2d at 20; *see also Keyes v. Secretary of the Navy,* 853 F.2d 1016, 1026–27 (1st Cir. 1988); *Johnson v. General Elec. Co.,* 840 F.2d 132, 138 (1st Cir.1988); *Springer v. Seaman,* 821 F.2d 871, 880 (1st Cir.1987).

Discrimination based on unprotected characteristics or garden-variety unfairness will not serve.

With these precepts squarely in mind, we proceed to evaluate Correa's allegations.

## III. THE DUE PROCESS CLAIM

As a prerequisite to his due process claim, plaintiff must demonstrate the existence of a constitutionally cognizable property or liberty interest. *See Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). Correa seeks to scale this hurdle by alleging that he had a property interest in his employment. He falls far short.

■ Constitutionally protected property interests originate in extra-constitutional sources; they are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *accord Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Rosario–Torres v. Hernandez–Colon,* 889 F.2d 314, 319 (1st Cir.1989) (en banc); *Ruiz–Roche v. Lausell,* 848 F.2d 5, 7 (1st Cir.1988). Here, plaintiff claims to derive his property interest principally from the circumstances of his hiring.

Correa acknowledges that OCA's engagement letter notified him that he had been named to a trust position in the Central Service.[3] He also concedes that Central Service employees are subject to dismissal at the employer's discretion. *See* P.R.Laws Ann. tit. 4, Appx. XIII, Reg. 16. These verities notwithstanding, Correa argues that the written confirmation of his particular appointment "tempered" the ramifications normally attendant to the post. In this respect, he points out that the

---

**3.** According to the Rules of Administration of the Personnel System of the Judicial Branch, positions in the Central Service include "[p]ositions of assistants to the executives and/or directing officers ... which because of their functions require personal trust." P.R.Laws Ann. tit. 4, Appx. XII, Rule 4(1)(c) (plaintiff's translation).

engagement letter admonished that "your permanency in the [position] will depend upon your efficiency, attitude, disposition and ... compliance with regulations in effect" from time to time. Plaintiff suggests that OCA thereby limited its discretion, granting him job security so long as he fulfilled these few written conditions.

Appellant's thesis boils down to the idea that the engagement letter *ex proprio vigore* comprised an independent source for a legitimate expectation of continued employment, and hence, for a property interest. We give Correa high marks for ingenuity but a failing grade in persuasion. The engagement letter clearly informed plaintiff that he was being hired to a trust position. He accepted the characterization then—and must accept it now. Trust employees may be freely dismissed in the discretion of the nominating authority (here, OCA); indeed, the very essence of trust positions is their lack of permanence. *See, e.g., Ruiz–Roche*, 848 F.2d at 7. So, plaintiff's construct has force only if, and to the extent that, the personnel director could effectively limit OCA's statutory powers by adopting terms and conditions outside of, and flatly inconsistent with, the legislatively mandated criteria. This is a Houdini-in-reverse argument, which assumes that a government employer can be securely locked into a box that the legislature has purposely left wide open. We find altogether untenable the notion that civil service laws can so nimbly be sidestepped.

We have regularly held that, under Puerto Rico law, government employees hired illegally to permanent or career positions are neither invested with property interests in continued employment nor entitled to the due process protections which inure to their legally hired counterparts. *See Rosario–Torres*, 889 F.2d at 319; *de Feliciano v. de Jesus*, 873 F.2d 447, 452–55 (1st Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989); *Santiago–Negron v. Castro–Davila*, 865 F.2d 431, 436–37 (1st Cir.1989); *Kauffman v. Puerto Rico Tele-*

*phone Co.*, 841 F.2d 1169, 1173 (1st Cir. 1988).[*] In those cases, the plaintiffs were hired in violation of the Puerto Rico Personnel Act or some other recruitment protocol. *See, e.g., Rosario–Torres*, 889 F.2d at 319. Notwithstanding that the fault was entirely the nominating authority's, we ruled that an employer's "failure to abide by the rules when [employees] were hired ... has nothing to do with ... whether or not Puerto Rico law gave the plaintiffs a sufficient 'property interest' in their jobs as to invoke the protection of the Fourteenth Amendment." *de Feliciano*, 873 F.2d at 454; *see also Franco v. Municipality of Cidra*, 113 D.P.R. 334, 337 (1982) (municipality's "decisions and actions, which were contrary to and incompatible with the Personnel Act, lacked sufficient legal force to create and ratify a career position and appointment that was essentially a confidential position"); *Colon–Perez v. Mayor of Municipality of Ceiba*, 112 D.P.R. 934, 940 (1982) (same).

Unless we are prepared to abandon the rationale of this line of cases, it must follow that OCA's personnel director could not effectively confer a property interest on plaintiff merely by making statements contrary to the Commonwealth's extensive statutory/regulatory framework anent government employment. *Cf. Goyco de Maldonado v. Rivera*, 849 F.2d 683, 688 (1st Cir.1988) (government employer may not insulate employment decisions from constitutional scrutiny "by the relatively simple expedient of passing a rule or enacting a by-law"). In Puerto Rico, an incoming administration has a legislatively assured right to fill jobs implicating the employer's confidence or trust with persons of the administration's choosing. We do not believe that this right can be subjected to casual deprivation or that the legislature's will can so easily be thwarted. Indeed, were plaintiff's general argument to prevail, the carefully thought-out civil service system could easily be wrecked by mid-ech-

---

[*] Judge Torruella continues to believe that this line of authority is wrongly decided, *see Rosario–Torres*, 889 F.2d at 325–26 (Torruella, J., dissenting), and in any event, is of the opinion that present reliance on the same is unnecessary to decide the issues raised by this appeal. He therefore disassociates himself from this portion of the opinion.

elon managers bent on shaping the system to their own ends.

To be sure, an employer's unilateral declarations, promises, or conduct regarding conditions of continued employment might in some circumstances create a "legitimate claim of entitlement to job tenure." *Perry v. Sindermann*, 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972). In *Perry*, for example, the Court held that a professor should have been given an opportunity to prove his claim that he had developed a property interest under the college's unwritten *"de facto"* tenure program. *Id.* at 603, 92 S.Ct. at 2700. The Court noted that the "absence of ... an explicit contractual provision may not always foreclose the possibility that a teacher has a 'property' interest in re-employment," especially where the employer's practices or representations supplement other, explicit contractual provisions. *Id.* at 601–02, 92 S.Ct. at 2699–2700; *see also Cheveras Pacheco v. Rivera Gonzalez*, 809 F.2d 125, 127 (1st Cir.1987) (recognizing that interstitial or supplemental representations might create constitutionally protectable property interests).

■ The *Perry* rule depends, of course, on perforation, that is, on pockets of uncertainty. Where an employment scheme—whether statutory, contractual, or mixed—is silent on specific points, pocked with fissures, or infected by a serious strain of ambiguity, an employer's conduct or declarations may quite appropriately be used to fill the gaps. In the case at bar, however, there were no gaps to fill. The written assurances given to plaintiff, to the extent they can be interpreted to mean what plaintiff says they mean (a matter as to which we take no view), stand in direct contravention of a comprehensive network of statutory and regulatory directives governing the terms of Central Service employment and trust positions generally. It would rock the foundations of that system to rely on the arguably contradictory terms of a personnel director's welcoming missive to

supervene the letter of law. Thus, the engagement letter could not and did not create a cognizable property interest in the Executive Director I position. *Cf. Ruiz–Roche*, 848 F.2d at 8 (government employer's naked promise of future career employment insufficient to create property interest on part of trust employee).

■ There is yet another base to be touched. Both apart from, and in concert with, the engagement letter, Correa also argues his due process claim in terms of "fundamental fairness." We are not unsympathetic to his plea. Plaintiff served the judicial branch well for seven years. He toiled under four administrative judges, none of whom ever questioned his trustworthiness or competence. In short, taking the complaint at face value, he did nothing wrong. Be that as it may, length of employment and good behavior, in and of themselves, customarily do not create a property interest in continued employment. *See Perry*, 408 U.S. at 601–02, 92 S.Ct. at 2699–2700; *Bollow v. Fed. Reserve Bank of San Francisco*, 650 F.2d 1093, 1099 (9th Cir.1981), *cert. denied*, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982). That plaintiff claims to have performed mainly administrative duties is beside the point; what matters, in the due process context, is the legislative classification of Correa's position as one of trust in the Central Service.

■ As in the cases where employees were assigned career positions in an irregular manner and had good reason to believe that their positions were secure, plaintiff's subjective expectancies cannot override the unambiguous commands of the civil service laws. Without some legal source other than a superior officer's unilateral and/or unauthorized actions contrary to Puerto Rico law, a government worker's pretensions to a constitutionally cognizable property right in his employment must be turned aside. *See Rosario–Torres*, 889 F.2d at 316; *de Feliciano*, 873 F.2d at 453–55; *Santiago–Negron*, 865 F.2d at 436; *Kauffman*, 841 F.2d at 1173.[4]

---

**4.** Correa's case, we might add, is considerably less compelling than the cited cases in that, unlike the employees in, say, *Rosario–Torres*,

889 F.2d at 316, Correa was clearly informed from the beginning that his position was one of trust within the Central Service. Moreover, the

Plaintiff tries unsuccessfully to bolster his due process claim by pointing to the Regulations of Administration of the Personnel System of the Judicial Branch, specifically P.R.Laws Ann. tit. 4, Appx. XIII, Reg. 2 (employees "shall receive just and equitable treatment, without discrimination of any type based on race, creed, color, sex, social condition or political affiliation") (plaintiff's translation). Without an adequate allegation of discrimination based on *plaintiff's* political affiliation, *see infra* Part IV, the regulation is simply not in play. Nor can the other, arguably ambiguous, regulatory language to which Correa alludes, *e.g.*, P.R.Laws Ann. tit. 4, Appx. XIII, Reg. 3, be construed to contradict the fundamental merit principle embodied in Puerto Rico's extensive public employment scheme.

To say more would be to paint the lily. Because the plaintiff has not alleged facts sufficient to support a reasonable expectation of, or recognizable property interest in, continued government employment, defendants were not constitutionally required to afford him any process before ending his OCA service. Insofar as the motion to dismiss addressed the due process claim, it was properly granted.[5]

## IV. THE FIRST AMENDMENT CLAIM

The foregoing explication does not entirely settle matters. Correa also contends that his first amendment rights were abridged. That statement of claim, if otherwise actionable, cannot be defeated by the lack of a property interest. *See Branti*

*v. Finkel,* 445 U.S. 507, 512 n. 6, 100 S.Ct. 1287, 1291 n. 6, 63 L.Ed.2d 574 (1980); *Santiago–Negron,* 865 F.2d at 436; *Cheveras Pacheco,* 809 F.2d at 128. As the Court has taught:

[E]ven though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely.

*Perry,* 408 U.S. at 597, 92 S.Ct. at 2697.

The crux of the first amendment initiative is the allegation that the defendants "were motivated by their discriminatory intent to terminate plaintiff from his employment because of his close association with [the former administrative judge] ... with whom defendants have personal and political differences." The district court held that no cause of action was stated. We agree.

At a bare minimum, plaintiff's burden at the pleading stage was to allege facts which, if proven, would demonstrate that his forced resignation was brought about by discrimination on the basis of some constitutionally safeguarded interest. *See Branti,* 445 U.S. at 515, 517, 100 S.Ct. at 1293, 1294; *Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Cordero v. de Jesus–Mendez,* 867 F.2d 1, 5 (1st Cir.1989). The Supreme Court has held that the first amendment protects nonpolicymakers from being drummed out of public service on the basis of their political affiliation or advocacy of ideas.[6] *See Branti,* 445 U.S. at 517,

fact that superiors had not exercised their discretion to dismiss an at-will employee does not normally preclude them from changing their mind, nor does it preclude a new superior officer from exercising the prerogative.

5. Although plaintiff's complaint mentions substantive due process as well as procedural due process, he does not press the former point on appeal. In view of "the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived," *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990), we omit any discussion of substantive due process.

6. We use the term "nonpolicymakers," perhaps inartfully, as a shorthand reference to those

instances where, because the affected employees are neither "involved in policymaking, the communication of political ideas, or sensitive tasks connected with the policymaking function," *Vazquez Rios v. Hernandez Colon,* 819 F.2d 319, 322 (1st Cir.1987), nor "occupy[ing] positions of ... unusually intimate propinquity to government leaders," *id.* at 324, partisan affiliation is an inappropriate job criterion. Inasmuch as Correa has not alleged facts sufficient to permit a finding that a constitutionally sacrosanct interest was transgressed, *see infra,* we need not decide whether political loyalty was a permissible requirement for the position that he held. For the same reason, we have no occasion to reach appellant's contention that this case differed from other public employment cases be-

100 S.Ct. at 1294 (dismissals actionable if plaintiffs "were discharged 'solely for the reason that they were not affiliated with or sponsored by [a particular] Party' ") (citation omitted); *Elrod v. Burns*, 427 U.S. 347, 357, 96 S.Ct. 2673, 2681, 49 L.Ed.2d 547 (1976) (plurality op.) (first amendment protects "freedom to associate with others for the common advancement of political beliefs and ideas"); *cf. Perry*, 408 U.S. at 597–98, 92 S.Ct. at 2697–98 (government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech"). We have myriad cases in the same mold. *See, e.g., Agosto de Feliciano v. Aponte–Roque*, 889 F.2d 1209, 1212 n. 1 (1st Cir.1989) (en banc) (setting forth partial listing); *Rosario–Torres*, 889 F.2d at 315 (similar). The case at bar is at a further remove.

Here, plaintiff does not allege that his politics, his ideology, or his advocacy of political goals led to his downfall. The complaint is altogether silent as to whether Correa had any partisan affiliation or espoused any controversial political views. It does not say if, or how, Correa's affiliations or views differed from those of the incumbent judges. Refined to bare essence, then, plaintiff does not claim that defendants discriminated against him on the basis of his political beliefs or advocacy of ideas—discrimination which would implicate an interest shielded by the Bill of Rights. Rather, he asserts only that defendants had "personal and political differences" with an unrelated individual, Judge Padilla (the jurist formerly in charge of the Guayama Judicial Region), and discriminated against him (plaintiff) because of his "close association" with Judge Padilla. We do not think that such discrimination, if it existed, impinged upon a constitutionally protected right.

◼] Various relationships have been sheltered under the capacious constitutional tent of freedom of association. *See, e.g., NAACP v. Button*, 371 U.S. 415, 429–30, 83 S.Ct. 328, 335–36, 9 L.Ed.2d 405 (1963) (first amendment protects "vigorous advocacy" and right "to engage in association for the advancement of beliefs and ideas"); *NAACP v. Alabama*, 357 U.S. 449, 460, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958) (Bill of Rights safeguards "beliefs sought to be advanced by association [which] pertain to political, economic, religious or cultural matters"). Nevertheless, it is clear that, in constitutional terms, freedom of association is not to be defined unreservedly. Entry into the constitutional orbit requires more than a mere relationship. The Constitution may be interposed as a barrier to state action only to the extent that the targeted association is characterizable in terms of some particular constitutional concern. *See United States v. Comley*, 890 F.2d 539, 544 (1st Cir.1989); *see also* L. Tribe, American Constitutional Law § 12–23, at 702–03 (1978). Put another way, the first amendment does not protect against all deprivations arising out of an act of association unless the act itself—say, joining a church or a political party, speaking out on matters of public interest, advocacy of reform—falls within the scope of activities eligible for inclusion within the constitutional tent.

Analyzed in this light, Correa's complaint was vulnerable to a motion to dismiss. The complaint did not say that plaintiff possessed, or expressed, any significant political views; indeed, implicit in plaintiff's arguments is the suggestion that he, himself, scrupulously avoided partisan political involvement.[7] The complaint contained no facts regarding the political contours, if any, of Correa's relationship with Judge

cause he was an employee of the judicial branch of government. No matter how tantalizing issues may appear, courts must be reluctant to plunge headlong into uncharted decisional waters where no need exists.

7. Appellant has not claimed that, although he was in fact nonpolitical, defendants forced him to resign because they (mistakenly) thought he was a member of the opposition party. We express no opinion, therefore, on whether a discharge which arises not out of an employee's political activity, but out of the government employer's belief, wrongly held, that the employee was in league with the opposition party, would be actionable under the rubric of the first amendment.

Padilla. It contained no facts capable of supporting an inference that the relationship came within the constitutional orbit. It did not maintain that defendants knew anything about plaintiff's politics or that their motivation related in the slightest to plaintiff's exercise of any first amendment or other constitutionally protected right.

This deficit, we suggest, leaves a chasmal gap—one not bridged by plaintiff's bald assertion that defendants constructively discharged him due to his relationship with Judge Padilla. At most, the complaint might support an inference that politics was in the air between defendants and Judge Padilla. Nevertheless, a politically charged atmosphere of that sort, without more, provided no basis for a reasonable inference that defendants' employment decisions about *plaintiff* were tainted by their disregard of *plaintiff's* first amendment rights. *Cf. Dartmouth Review*, 889 F.2d at 16 ("smoke alone is not enough to force the defendants to a trial to prove that their actions were not ... discriminatory") (citation omitted). Absent a constitutionally protected aspect, a "close relationship" with a third party is insufficient to invoke the prophylaxis of the *Elrod–Branti* rule, notwithstanding that consideration of *the third party's political beliefs* may have entered into the decisionmaking calculus.

■ Of course, plaintiff tells us that political association is the protected characteristic, but that approach, too, rings hollow. Merely juxtaposing a protected characteristic—someone else's politics—with the fact that plaintiff was treated unfairly is not enough to state a constitutional claim. *See Dartmouth Review*, 889 F.2d at 19; *see also Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 9 (1st Cir.1990) (in age discrimination case, plaintiff must show a discriminatory animus based on his age); *White v. Vathally*, 732 F.2d 1037, 1042–43 (1st Cir.) (similar; Title VII), *cert. denied*, 469 U.S. 933, 105 S.Ct. 331, 83 L.Ed.2d 267 (1984); *Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir.1982) (factual allegations must show that protected quality "was the *reason* for dismissal"). What is needed is a fact-specific showing that a causal connection exists linking defendants' conduct, as manifested in the adverse employment decision, to plaintiff's politics, that is, the plaintiff must have pled facts adequate to raise a plausible inference that he was subjected to discrimination based on his political affiliation or views. No such facts were marshalled here.

■ We make one final observation. We do not suggest that if, as plaintiff would have it, defendants chose to jettison a competent, hardworking employee because of his loyalty, real or imagined, to a former superior, the court system would be well served or fairness achieved. But that is not the point. In the absence of a cognizable federal question, a federal court cannot intrude upon another sovereign's civil service system and declare itself a court of last resort to hear personnel appeals addressed to the wisdom, or even the good faith, of staffing decisions reached by the government actors. *Cf., e.g., Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1341 (1st Cir.1988) (Age Discrimination in Employment Act "does not stop a company from discharging an employee for any reason (fair or unfair) or for no reason, so long as the decision to fire does not stem from the person's age"); *Gray v. New England Telephone and Telegraph Co.*, 792 F.2d 251, 255 (1st Cir.1986) (civil rights laws do not forestall cashiering an employee "arbitrarily or with ill will," absent prohibited discrimination).

■ We have said enough. While Rule 12(b)(6) requires deference to the well-pleaded allegations of plaintiff's complaint, we are not obligated to give free rein to imagination. *See Gooley*, 851 F.2d at 514 ("court need not conjure up unpled allegations or contrive elaborately arcane scripts"). Although we must draw all reasonable inferences in plaintiff's favor, we are not obligated to credit every conceivable inference. *See Gray*, 792 F.2d at 256 ("unreasonable and speculative inferences" cannot be allowed to bottom a civil rights action). The evenhanded application of these principles necessitates that we affirm the ruling that plaintiff's complaint failed

to state an actionable first amendment claim.

## V. THE REQUEST TO AMEND

After defendants moved to dismiss in the district court, plaintiff had an opportunity to amend his complaint as of right.[8] Eschewing such a course, plaintiff instead opposed the motion and inserted in his opposition a request that he be allowed to file an amended complaint if the motion was granted. The district court never acted on the request. Correa now portrays this omission as an abuse of the court's discretion.

██ Because leave to amend "shall be freely given when justice so requires," Fed. R.Civ.P. 15(a), a district court's denial of a chance to amend may constitute an abuse of discretion if no sufficient justification appears. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). On the other hand, a district court need not grant every request to amend, come what may. *See Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1121 (1st Cir.1989); *Quaker State Oil Refining Corp. v. Garrity Oil Co.*, 884 F.2d 1510, 1517–18 (1st Cir.1989). Where an amendment would be futile or would serve no legitimate purpose, the district court should not needlessly prolong matters. *See Foman*, 371 U.S. at 182, 83 S.Ct. at 230. For aught that appears, this case is in that vein.

We have examined the amendments suggested in plaintiff's opposition to the motion to dismiss and in his appellate brief. We find nothing of decretory significance, that is, nothing which would repair the holes in Correa's case. For example, plaintiff offered to submit the unexpurgated text of the engagement letter, but there is no indication that any statements other than the excerpts already contained in the complaint would be relevant. Plaintiff also offered several sworn statements substantiating what the complaint already alleged about plaintiff's excellent work record, the nature of his duties, and OCA's wonted personnel practices. These submissions would plainly have been superfluous; the well-pleaded allegations of the complaint, without buttressing, were taken as true for purposes of defendants' Rule 12(b)(6) motion. *See supra* Part II and cases cited. Moreover, as we have explained at some length, this case is not about the essential justness of defendants' decision to oust plaintiff from his governmental post; it is about the presence or absence of a claim cognizable under the federal Constitution and 42 U.S.C. § 1983.

██ Having culled plaintiff's representations as to what he might in good faith be able to allege, we are satisfied that this is an instance where "the 'new' facts are of the same genre as the 'old' facts...." *Dartmouth Review*, 889 F.2d at 23. Without any indication that plaintiff had unearthed a viable basis for his stated claim, or that there was some hope for another (legally sufficient) claim, the court below did not abuse its discretion in failing to grant Correa's request for leave to amend.[9]

## VI. CONCLUSION

To recapitulate, plaintiff has failed to demonstrate anything more than a unilater-

---

**8.** A party may amend "once as a matter of course at any time before a responsive pleading is served." Fed.R.Civ.P. 15(a). Inasmuch as defendants' dismissal motion did not constitute a responsive pleading, *see Dartmouth Review*, 889 F.2d at 22; *McDonald v. Hall*, 579 F.2d 120, 121 (1st Cir.1978), plaintiff was not required to seek leave to amend.

**9.** We note in passing that plaintiff offhandedly inserted the conditional request to amend in his opposition below and did not renew it after the district court ruled. He may very well have waived the point. *See generally Dartmouth Review*, 889 F.2d at 22 ("In this circuit, 'it is a party's first obligation to seek any relief that might fairly have been thought available in the district court before seeking it on appeal.'") (quoting *Beaulieu v. United States Internal Revenue Service*, 865 F.2d 1351, 1352 (1st Cir.1989)); *Rivera–Gomez v. de Castro*, 843 F.2d 631, 635–36 (1st Cir.1988) ("When in the ordinary case, 'the pleader has stood upon his pleading and appealed from a judgment of dismissal, amendment will not ordinarily be permitted ... if the dismissal is affirmed.'") (citation omitted); *cf. James v. Watt*, 716 F.2d 71, 77–78 (1st Cir.1983), *cert. denied*, 467 U.S. 1209, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984). We have elected, however, to address the question frontally.

al expectation of continued employment at OCA. While he may or may not have been treated fairly, we find nothing in the record which might demonstrate that he had a property interest in his job or that constructive discharge was offensive to the Constitution. Plaintiff's first amendment claim, which pivots not on his politics but on the persona and politics of a third party, will not wash. And because Correa's proffered amendments were designed to amplify substantively defective statements of claim rather than to repair the defects, there was no good reason to allow the filing of an amended complaint.

We need go no further. Correa's suit was appropriately dismissed. The order and judgment below must therefore be

*Affirmed.*