Robert WAGNER and Margaret Wagner,
Plaintiffs, Appellants,

v.

Patricia DEVINE, Kevin A. Jourdain,
Charles E. Moran, III, Arthur Therrien,
John E. Whelihan, The City of Holyoke,
Massachusetts, The International
Brotherhood of Police Officers, Local
388, and The International Brotherhood
of Police Officers, Defendants, Appel-
lees.

No. 96–2315.

United States Court of Appeals,
First Circuit.

Heard May 5, 1997.

Decided Aug. 1, 1997

Stewart T. Graham, Jr., Hampden, MA, for appellants.

John H. Fitz–Gibbon with whom Harry L. Miles, Northampton, MA, was on brief for appellees Devine, Jourdain, Moran, Whelihan and the City of Holyoke, Massachusetts.

Lawrence D. Humphrey, Quincy, MA, for appellees Therrien, International Brotherhood of Police Officers, Local 388, and the International Brotherhood of Police Officers.

Before SELYA, Circuit Judge, COFFIN and CYR, Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

Appellant Robert Wagner, former chief of police in Holyoke, Massachusetts, claims that his First Amendment freedom of political association was violated when members of the city council and others subjected him to severe harassment, ultimately forcing him to resign, because of his political support for the city's mayor. He filed this lawsuit alleging federal constitutional and state law claims.[1] The district court dismissed the First Amendment counts for failure to state a claim, and declined supplemental jurisdiction over the state law counts. Because the First Amendment does not protect a policymaking official such as appellant from criticism and harassment, we affirm.

### I. Factual Background [2]

Appellant Wagner was appointed Holyoke's chief of police in July 1991 by then newly elected Mayor Hamilton. Wagner asserts that four members of the City Council who were Hamilton's political opponents engaged in a campaign of harassment against him for the purpose of embarrassing the mayor and forcing appellant to resign. He contends that their criticisms of his job performance were unfair and inaccurate, and that their actions were motivated solely by their opposition to his political beliefs and his political support of the mayor.[3] He further asserts that the president of the police union, and through him the local and international unions, conspired with the council members to effectuate the plan to oust him.

The complaint accuses the council members of harassing him by means of unspecified "actions," and numerous false and defamatory statements. At the hearing on the motion to dismiss, appellant's counsel identified the challenged actions as follows:

> They were constantly criticizing him. They had subcommittees that they were chairing and they had him up to see the council constantly, criticizing him in everything he did.... They tried to eliminate his salary. They reduced his salary.

For purposes of the motion to dismiss, we take the allegations as true and grant all reasonable inferences in Wagner's favor. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996).

---

1. The complaint included a count for loss of consortium on behalf of Wagner's wife, Margaret Wagner. Because this claim survives or fails with Robert Wagner's state claims, we do not address it separately.

2. We note that the facts alleged in Wagner's complaint provide a much sketchier picture of the defendants' alleged conduct than the facts described by counsel at the hearing on defendants' motion to dismiss. In reviewing a Rule 12(b)(6) dismissal, we typically consider the "well-pleaded facts as they appear *in the complaint*," see *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir.1990) (emphasis added). Because we ultimately uphold the dismissal, and the additional facts are helpful in understanding the case, we draw the facts in this section from both the complaint and the hearing.

3. In his appellate briefs, Wagner makes several passing references to a First Amendment violation based on his political speech, as well as on political affiliation, and he cites several speech cases in support of his arguments. The complaint, the hearing on the motion to dismiss, and the district court's opinion all reveal that this case has been litigated solely on the theory that defendants harassed and constructively discharged him based on his political beliefs and affiliation. Our analysis is therefore confined to that context.

They reduced his benefits. They refused to fund programs that he was pushing. Although the mayor has sole authority under the city charter to hire or fire the police chief, the council has power to set the salary and benefits for the position. According to Wagner, the four defendant council members, a minority of the governing body, "led the charge" against him and secured the complicity of enough other councilors to accomplish their unlawful objectives.

■ Wagner resigned in September 1994. He asserts that he was forced to do so because the defendants' actions and statements hindered, undermined, and interfered with the performance of his duties, and thus constituted a constructive discharge.[4]

This lawsuit followed. In addition to federal civil rights claims under 42 U.S.C. § 1983, which assert violation of his First Amendment right to political association, Wagner alleged a state civil rights violation, and state law claims of defamation, tortious interference with contractual relations, and, in his wife's name, loss of consortium. In response to the defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6), the district court substantively addressed only the section 1983 count. It ruled that "the alleged harassment which Wagner sustained at the hands of a minority of the city councilors and a subordinate police officer was not of sufficient degree to constitute 'a constitutionally significant burden on [Wagner's] political association right.'" Memorandum and Order at 5 (quoting Agosto–de–Feliciano v. Aponte–Roque, 889 F.2d 1209, 1216 (1st Cir.1989) (en banc )).

The court also concluded that, even if the harassment had been sufficiently severe to implicate constitutional concerns, Wagner's First Amendment claim still would fail because the police chief's position was one for which political affiliation is an appropriate requirement. Public employees who hold such positions, the court ruled, are not protected by the First Amendment from partisan attacks on their job performance. Having dismissed the federal claims, the court declined to exercise supplemental jurisdiction over the remaining state law causes of action and dismissed them as well.

■ The Wagners then filed this appeal. Our review of the district court's Rule 12(b)(6) dismissal is de novo. Romero–Barcelo v. Hernandez–Agosto, 75 F.3d 23, 28 n. 2 (1st Cir.1996). We may affirm a dismissal for failure to state a claim only if it clearly appears that, on the facts alleged, the plaintiff cannot recover on any viable theory. Correa–Martinez v. Arrillaga–Belendez, 903 F.2d 49, 52 (1st Cir.1990). Because the district court's ruling that the First Amendment does not protect Wagner from politically motivated discrimination is both correct and dispositive, we turn to that issue first.[5]

## II. Discussion

■ The Supreme Court more than twenty years ago established that the First Amendment provides protection for public employees from adverse job action based solely on partisan political affiliation. See Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion);

4. Defendants contend that they cannot be found liable for a constructive discharge because only the mayor had the authority to fire Wagner. Their argument cuts too narrowly. Although the city council may not have had explicit authority to terminate the police chief, its authority to set salary, benefits and working conditions gave it the power to accomplish a constructive discharge. See, e.g., Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 480 (1st Cir.1993) (constructive discharge occurs when "working conditions [are] so intolerable[ ] that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities"); Aviles–Martinez v. Monroig, 963 F.2d 2, 6 (1st Cir.1992) (similar). Of course, a minority of the council does not have such power, and a finding of constructive discharge would require some showing that the challenged conduct actually was attributable to the alleged discrimination. See generally Scott–Harris v. City of Fall River, Nos. 95–1950–1952, 95–2100, 1997 WL 9102, at *9–10 (1st Cir. Jan.15, 1997), cert. granted sub nom Bogan v. Scott–Harris, —— U.S. ——, 117 S.Ct. 2430, 138 L.Ed.2d 192(1997) (No. 96–1569). In any event, as we conclude infra, such a discharge would not be actionable if, as here, the affected employee was a policymaker.

5. Wagner contends that the district court's other holding, that the harassment he suffered was not constitutionally significant, was based on a misreading of the complaint. We need not, and therefore do not, take up this issue.

*Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Rutan v. Republican Party,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990).[6] The protection is not universal, however. In its precedent-setting case examining the constitutionality of the patronage system, the Court recognized the competing First Amendment interest of the in-power political party "to insure that policies which the electorate has sanctioned are effectively implemented," *Elrod,* 427 U.S. at 372, 96 S.Ct. at 2689. The Court therefore allowed patronage practices to continue for those employees who, *inter alia,* make policy or occupy positions of confidence. *Id.; Branti,* 445 U.S. at 517–18, 100 S.Ct. at 1294–95.[7]

Our circuit has since faced a long line of cases raising the issue of political discrimination in employment, most of which have focused on whether the particular position held by the plaintiff employee fell inside or outside the First Amendment-protected sphere. *See, e.g., Agosto–de–Feliciano,* 889 F.2d at 1212 & n. 1, 1218 (noting "first wave" of cases involving outright dismissals, and adopting standard for evaluating "second wave" cases involving discriminatory conduct falling short of discharge). This case presents an interesting departure from the norm. Both parties accept that Wagner's job as police chief sufficiently elevated him in the Holyoke hierarchy that, under the principles we have just outlined, he could be fired based on political affiliation.

Wagner, however, contends that he was subjected to an impermissible constructive discharge because only the mayor—the official who hired him and for whom he served as a policymaker—may fire him based on political affiliation without violating the First Amendment. This is so, he maintains, because the *Elrod–Branti* exception was designed to ensure that the policies of a new administration—"policies presumably sanc-

tioned by the electorate," *Elrod,* 427 U.S. at 367, 96 S.Ct. at 2686—would not be undercut by the obstructive tactics of opposition incumbents. This rationale provides no justification for *opponents* of a new administration—such as the defendants here—to harass the administration's supporters. Their conduct, Wagner argues, is therefore unconstitutional.

Wagner's analysis ignores the reality of precedent. Both Supreme Court and First Circuit caselaw have recognized the applicability of the *Elrod–Branti* dichotomy outside the context of a new administration's patronage practices. The conflict in *Rutan,* where the Supreme Court held that the First Amendment forbids government officials from basing less-than-discharge actions such as hiring, promotion, and transfer on political affiliation and support, did not arise amidst the seating of a new administration. At issue was the implementation of an executive order proclaiming a hiring freeze, with "exceptions" allegedly made based on political affiliation. In referring back to *Elrod* and *Branti* in the opinion's opening paragraph, the majority broadly described those cases as protecting public employees from discharge "solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved," 497 U.S. at 64, 110 S.Ct. at 2731. That decision indicates that the First Amendment protection against patronage practices, as well as the exceptions for certain categories of highly placed employees, apply whenever public employees are at odds politically with their superiors and thus subject to politically discriminatory behaviors.

Our decision in *Romero–Barcelo,* 75 F.3d at 33–34, brings us even closer to the present context. In rejecting a former Puerto Rico governor's allegations that he had suffered severe political discrimination during a mur-

**6.** The Supreme Court addressed politically motivated discharges in *Elrod* and *Branti,* extending its reasoning to other forms of employment discrimination in *Rutan.*

**7.** At various points in this opinion, we use the term "policymaker" as a shorthand reference for the several categories of employees for whom partisan affiliation is an appropriate job criteri-

on. Such employees are " 'involved in policymaking, the communication of political ideas, or sensitive tasks connected with the policymaking function,' *Vazquez Rios v. Hernandez Colon,* 819 F.2d 319, 322 (1st Cir.1987), [ ]or 'occupy[ ] positions of ... unusually intimate propinquity to government leaders,' *id.* at 324." *Correa–Martinez,* 903 F.2d at 56 n. 6.

der investigation because of his association with the out-of-power New Progressive Party (NPP), we stated:

> The Supreme Court has held that the First Amendment "protects nonpolicymakers from being drummed out of public service on the basis of their political affiliation or advocacy of ideas." ... But Romero–Barcelo most assuredly qualified as an NPP policymaker.... Thus, the district court correctly found no First Amendment protection for "a politician whose rights to freedom of speech, freedom of association, and freedom 'to disassociate [oneself] from unpopular views' have been injured by other politicians seeking to undermine his credibility within his own party and with the electorate."

75 F.3d at 34 (citations omitted). *Cf. LaRou v. Ridlon*, 98 F.3d 659, 661 (1st Cir.1996) (noting as a general principle that "[t]he First Amendment protects nonpolicymaking public employees from discrimination based on their political beliefs or affiliation"); *Correa–Martinez*, 903 F.2d at 56–57 & n. 6 (same).

Our conclusion in *Romero–Barcelo* stemmed from a recognition that an administration's need to assure that it can implement the people's will is matched by the equally legitimate right of political opponents to exert pressure on behalf of their viewpoints and constituents. Indeed, like the mayor, the minority members of the Holyoke City Council represented a portion of the electorate, and they therefore share the rationale that they were pursuing objectives sanctioned by the voters who supported them. The democratic process envisions a give-and-take in matters of policy, and the unfortunate fact that some individuals will be caught in the crossfire is "an all too real by-product of our long-standing organization of political life into two or more parties," *Agosto–de–Feliciano*, 889 F.2d at 1217.

■ The *Elrod–Branti* line of cases struck a balance between the competing First Amendment interests by excluding policymaking public employees from constitutional protection. *See, e.g., id.* at 1215 (quoting

*Elrod* to the effect that "there are First Amendment interests on both sides"); *Pieczynski v. Duffy*, 875 F.2d 1331, 1334 (7th Cir.1989) (noting "the balance"). Policymakers, as front-line representatives of the policies they were hired to implement, can be expected to face stinging partisan attacks against their efforts by outsiders seeking to persuade the electorate (and fellow legislators) to make them the insiders. Wagner was in a particularly vulnerable position because of the division of power over his job between the mayor and city council, both of whom possessed municipal authority—albeit in different ways—to terminate his employment. At least when the political pressure exerted by those in power is within their authority,[8] the First Amendment does not provide a shield for those whose positions are politically sensitive.

We add this comment about appellant's particular circumstances. Were appellant's argument to be accepted—*i.e.*, that harassment and criticism by political opponents rising to the level of a constructive discharge constituted a First Amendment violation—we quail at the prospect of judges and juries being inundated by claims of unhappy politicians that their opponents had transgressed the boundary between constitutional and unconstitutional fair play. Partisan politics does not, we fear, lend itself to the rulemaking authority of a Marquess of Queensberry.

■ We therefore conclude that, because there is no dispute that appellant Wagner's position as police chief was a policymaking one, the district court properly held that he had no First Amendment right to be free from discriminatory treatment based on his politics. This conclusion makes it unnecessary to consider the other issues surrounding his First Amendment claims, including the adequacy of his allegations, the scope of legislative immunity, and whether the allegedly improper motives of a four-member minority of a fifteen-member city council provide a basis for municipal liability. In these circumstances, dismissal of the state law

---

8. There is no allegation, for example, that the city council lacked authority to reduce, or even eliminate, the police chief's salary, or that improper procedures were followed.

claims also is appropriate. *See McIntosh v. Antonino,* 71 F.3d 29, 33 n. 3 (1st Cir.1995).

*The judgment of the district court is affirmed.*