**LIBERTY MUTUAL INSURANCE COMPANY, Metropolitan Property and Casualty Insurance Company, Plaintiffs,**

v.

**Estrella DIAMANTE A/K/A Thea Javier A/K/A Susan Javier A/K/A Christina Reyes A/K/A Thea Reyes, Jerico Dino A/K/A Jay Dino, Magdalena Dino, Allan Perez, Highlands Medical Clinic, P.C., Mercy Medical Clinic, Inc. P.C., St. Peter's Medical Clinic, P.C., Lomass Management Inc., Blue Eagle Management, Inc., Srey Eng, Somphea Sin A/K/A Lenny Sin, Sarith**

**Srey, Vimuth Van Vang A/K/A Vanna Yang, Harvey Alford, Amantino Lopes, Corey Cutler, Gerard Palma, Linda Whittemore, Noemi Dominguez, New England Rehabilitation, Inc., Defendants.**

**No. CIV. A. 97–10744–RCL.**

United States District Court,
D. Massachusetts.

March 1, 2001.

---

James H. Budreau, Oteri Weinberg & Lawson, Boston, MA, Pro se.

Michael F. Farrington, Quincy, MA, Pro se.

Austin Vorasane, Lowell, MA, Pro se.

Linda Whittemore, Waltham, MA, Pro se.

David O. Brink, Sharon S. Callahan, Alexander J. Cochis, Gerald S. Cohen, Michael C. Cullen, Bruce Medoff, Maura Folan Wason, Smith & Brink, Quincy, MA, for Plaintiffs.

Paul R. Chomko, Alford & Bertrand, L.L.C., Watertown, MA, Daniel J. Cloherty, William H. Kettlewell, Dwyer & Collora, LLP, Boston, MA, Raymond B. Kim, Inman, Steinbergg, Nye & Stone, Los Angeles, CA, John T. Lamond, Hart & Lamond, Lowell, MA, John T. Landry, Braintree, MA, Donald B. Marks, Marks & Brooklier, Los Angeles, CA, Thomas E. Peisch, Conn, Kavanaugh, Rosenthal, Peisch & Ford, Boston, MA, Mark Roder, Campo Anderson, LLP, Boston, MA, Michael Garvey Scott, Conn, Kavanaugh, Rosenthal, Peisch & Ford, L.L.P., Boston, MA, Elliot M. Weinstein, Boston, MA, for Defendants.

Lynnfield Woods Office Park, Lynnfield, MA, George F. Gormley, Gormley & Colucci, P.C., Boston, MA, Peter C. Horstmann, Bailey, Fishman & leonard, Boston, MA, Peter B. Krupp, Lurie & Krupp, LLP, Boston, MA, Paul G. Levenson, United States Attorney's Office, Boston, MA, Daniel J. O'Connell, III, O'Connell & Pollenz, Boston, MA, Robert Wolkon, Wolkon & Pascucci, LLP, Boston, MA, for Interested Party.

### ORDER ON REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE (CUTLER)

LINDSAY, District Judge.

Upon consideration of the Report and Recommendation of Chief Magistrate Judge Collings on the disposition of the motion of defendant Corey Cutler to dismiss the thirty-seven claims asserted against him in the second amended complaint in this case, the court rules as follows. The Report and Recommendation is ACCEPTED. Accordingly, the court ALLOWS the motion, to the extent that Cutler is named in counts I–VI, IX–XVI, and XXXXVXXXXVI, and DENIES the motion, to the extent that it seeks dismissal of the claims asserted against Cutler in counts XIX–XXIV and XXVII–XXVIII. The motion is DENIED WITHOUT PREJUDICE as to counts XXIX–XXXVI and XXXIX–XXXXIV. Cutler's request for certification of certain questions is DENIED.

SO ORDERED.

### REPORT AND RECOMMENDATION ON DEFENDANT COREY CUTLER'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT (# 335)

COLLINGS, Chief United States Magistrate Judge.

#### I. Introduction

On January 22, 1999, the plaintiff insurance companies, Liberty Mutual Insurance Company (hereinafter "Liberty") and Metropolitan Property and Casualty Insurance Company (hereinafter "Metropolitan"), filed a one hundred seventy-six page, forty-seven count second amended complaint naming twenty individual and corporate defendants.[1] (# 265) The gravamen of this pleading is the allegation that the defendants engaged in a scheme to defraud the plaintiffs by submitting for payment false and fraudulent medical bills relating to services purportedly rendered at the defendant medical clinics. Individual defendant Corey Cutler (hereinafter "Cutler") has filed a motion to dismiss all of the thirty-seven claims asserted against him. (# 335) This dispositive motion has been

---

**1.** This is far from a "short and plain statement of the claim showing that the pleader is entitled to relief" as envisioned by Rule 8, Fed.R.Civ.P.

referred to the undersigned for the issuance of findings of fact and recommendations as to disposition pursuant to 28 U.S.C. § 636(b).

### II. The Standard

■ It has often been repeated that all the well-pled allegations of the complaint are to be construed as true and viewed in the light most favorable to the plaintiff when a motion to dismiss is under consideration. *Berner v. Delahanty*, 129 F.3d 20, 23, 25 (1 Cir.1997), *cert. denied*, 523 U.S. 1023, 118 S.Ct. 1305, 140 L.Ed.2d 470 (1998) *citing Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1 Cir. 1990); *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1 Cir.1989) ("Like the district court, we are governed by the familiar constraints of Fed.R.Civ.P. 12(b)(6). Accordingly, all well-pled factual averments must be accepted as true, and all reasonable inferences therefrom must be drawn in plaintiffs' favor. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 276, 96 S.Ct. 2574, 2576, 49 L.Ed.2d 493 (1976); *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).") Indeed, when the sufficiency of a complaint is challenged, it has long been the law that such "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim that would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)(footnote omitted); *Figueroa v. Rivera*, 147 F.3d 77, 80 (1 Cir. 1998).

In this instance, the focus is upon the second amended complaint. A detailed review of all the allegations of this mammoth pleading would be not only unwieldy but also unnecessary. Rather, following a general overview, the claims against Cut-

ler shall be highlighted and thereafter discussed in such depth as is required to resolve the motion to dismiss.

### III. The Second Amended Complaint

Metropolitan is a Rhode Island corporation licensed to do business as an insurer in the Commonwealth of Massachusetts. (# 265 ¶ 111) Liberty, a Massachusetts corporation with a principal place of business in Boston, is also licensed to do business as an insurer in the Commonwealth. (# 265 ¶ 112) Cutler is an attorney last known to have resided in Massachusetts. (# 265 ¶ 128)

Briefly sketching the contours of the second amended complaint, Metropolitan and Liberty contend that the defendants

> combined together to establish and operate [an] illicit and corrupt commercial venture [hereinafter referred to as the "CLINIC–RUNNER–ATTORNEY FRAUD SCHEME"] through which they systematically carried out, and aided in the carrying out, of a scheme to cause insurance carriers, including the PLAINTIFFS, to issue payments in connection with the settlement of false claims.

Second Amended Complaint # 265 ¶ 2.

It is alleged that certain of the individual defendants set up medical clinics in Lowell, Massachusetts,[2] and agreed to engage the services of so-called "runners" to recruit patients who would claim that they had been injured in automobile accidents and, in return, would be paid a fee. (# 265 ¶¶ 1, 21, 32, 569) Medical records for these patients at the clinic were fabricated, and, consequently, medical bills based on those records reflected "treatments that were either rendered to uninjured persons, rendered by non-licensed individuals without

---

**2.** Supposedly a local doctor was paid for the use of his name and his medical provider

identification number in connection with these clinics. (# 265 ¶¶ 38–41)

proper supervision, or not rendered to the extent indicated in such documentation." (# 265 ¶ 54) The practice of the clinics was to ensure that a minimum of two thousand dollars was billed for each patient since that amount represented the tort threshold for automobile claims in Massachusetts. (# 265 ¶¶ 55,63)

In addition to having a relationship with the medical clinics, it is further alleged that the runners referred these same patients to the defendant attorneys who are experienced personal injury lawyers. (# 265 ¶¶ 72, 84, 92) For such a referral, a runner was paid either a sum certain amount up-front or a percentage of the attorney fee to be realized upon the settlement of the patient's personal injury claim.[3] (# 265 ¶¶ 72, 83)

Cutler is named as a defendant in thirty-eight counts of the second amended complaint.[4] Counts I–VI, IX–XVI,[5] XIX–XXIV and XXVII–XXVIII are claims under civil RICO. Counts XXIX–XXXVI incorporate civil conspiracy claims. Counts XXXIX–XXXXVI [6] respectively are claims for deceit, violation of Massachusetts General Laws chapter 93A, intentional interference with contractual relations and unjust enrichment.

The pleading in the first six counts alleging violations of 18 U.S.C. § 1962(c) follows a similar pattern. In Counts I and II, the plaintiffs [7] allege that certain of the defendants, members of the Highlands Enterprise Group, have engaged in racketeering activities. The defendants who are purportedly part of this particular group are: Jerico Dino (hereinafter "J. Dino"), shareholder, President, Treasurer, Clerk and Director of Lomass Management Inc. (hereinafter "Lomass"),[8] manager of Mercy Medical Clinic, Inc., P.C. (hereinafter "Mercy"), manager of Highlands Medical Clinic, P.C. (hereinafter "Highlands") and a so-called "clinic operator"; Magdalena Dino (hereinafter "M. Dino"), owner of the property where Lomass and Mercy are located and a so-called "clinic operator"; Allan Perez (hereinafter "Perez"), President, Treasurer, Director and shareholder of Blue Eagle Management and Services, Inc. (hereinafter "Blue Eagle"),[9] as well as

---

**3.** The plaintiffs contend that the patients were also persuaded to split their bodily injury settlements with the runners. (# 265 ¶ 89)

**4.** The Court shall follow Cutler's lead with regard to the counts in which he says that he is a defendant, although it should be noted there is some ambiguity in the second amended complaint. Although Cutler states that he is a named defendant in Count III, in fact he is not. More precisely, in Count III Cutler is not named as a constituent member of the "Mercy Enterprise Group" whereas he is named as a member of the same group in Count IV. In Counts XIII, XIV, XXI, XXII, XXXIII, and XXXIV only the "Mercy Enterprise Group" is named as the defendant. Given the prior inconsistency in pleading the membership of the "Mercy Enterprise Group", it is uncertain whether Cutler is a defendant in the latter six counts.

**5.** The plaintiffs have agreed to dismiss Counts IX and X to the extent Cutler is named as a

defendant. *See* Plaintiffs' Memorandum # 348 at 2 n.1.

**6.** The plaintiffs have agreed to dismiss Counts XXXXV and XXXXVI, a claim for restitution, to the extent Cutler is named as a defendant. *See* Plaintiffs' Memorandum # 348 at 2 n.1.

**7.** Liberty and Metropolitan are plaintiffs in alternate counts.

**8.** Lomass is said to "supervise[ ] the billing for all of J. DINO'S clinics operating in Lowell and throughout New England", overseeing the processing of invoices for services rendered at the medical clinics that were regularly sent to Liberty and Metropolitan.(# 265 ¶ 116, 119)

**9.** Blue Eagle supposedly "conducted the business of the management of SPMC" including "the preparation and mailing of the medical documentation regularly mailed to" the plaintiffs. (# 265 ¶ 117)

an operator, shareholder and the Clerk of St. Peter's Medical Clinic, P.C. (hereinafter "SPMC") and a so-called "clinic operator"; Thea Javier (hereinafter "Javier"), a founder of both Highlands and SPMC and a so-called "clinic operator"; Sarith Srey (hereinafter "S. Srey"), a runner; Vimuth Van Yang (hereinafter "Yang"), a runner; Gerard Palma, Esquire, an attorney; Harvey Alford (hereinafter "H. Alford"), an individual last known to be a Massachusetts resident; Cutler, an attorney; and Amantino J. Lopes, Esquire (hereinafter "Lopes"), a former member of the Massachusetts Bar. (# 265 ¶¶ 119–23, 125–26, 128, 130–31, 133) The plaintiffs assert that these defendants conducted the affairs of Highlands, an enterprise affecting interstate commerce, "through an ongoing pattern of racketeering activity." (# 265 ¶¶ 238, 246) It is alleged that the named defendants "routinely delivered bills for medical services and expenses from HIGHLANDS through the billing agent, LOMASS [10], via the U.S. Mails" to the plaintiffs. (# 265 ¶¶ 237, 244) The plaintiffs claim that

> The ATTORNEY DEFENDANTS were associated with the HIGHLANDS ENTERPRISE GROUP through their association with (1) RUNNERS; (2) CLINIC OPERATORS; (3) the processing of false claims and demands upon insurance carriers seeking compensation for allegedly injured parties; and/or (4) by making demands for compensation from insurance companies, including the PLAINTIFFS, while simultaneously concealing their knowledge of, and participation in, the client purchasing kickback scheme described throughout this Amended Complaint.

Second Amended Complaint # 265 ¶¶ 235, 242.

It is further contended that "[t]his association had an identifiable structure, with each of the DEFENDANTS listed...undertaking a specific segment of function and responsibility to carry out and facilitate the affairs of the enterprise." (# 265 ¶¶ 236, 243) Finally, the conduct described is purportedly indictable under the federal mail fraud statute, with the plaintiffs being "persons" injured in their business or property by virtue of the violations of 18 U.S.C. § 1962. (# 265 ¶¶ 238, 245)

In Counts III and IV, Liberty and Metropolitan respectively allege claims for violation of 18 U.S.C. § 1962(c) by the Mercy Enterprise Group which, as defined, consists of the following members: J. Dino; M. Dino; Lomass, a so-called "clinic operator"; Noemi Dominguez (hereinafter "Dominguez"), a so-called "clinic operator" connected with Mercy; New England Rehabilitation, Inc. (hereinafter "NER"), a Massachusetts corporation; Yang; Srey Eng (hereinafter "Eng"), a runner; Somphea Sin (hereinafter "Sin"), a runner; S. Srey; Palma; and Cutler. (# 265 ¶¶ 116, 118–20, 124, 128, 130–34, 250) The plaintiffs assert that these defendants conducted the affairs of Mercy, an enterprise affecting interstate commerce, "through an ongoing pattern of racketeering activity." (# 265 ¶¶ 255–56) It is alleged that the named defendants "routinely delivered bills for medical services and expenses from MERCY through the billing agent, LOMASS, via the U.S. Mails" to the plaintiffs. (# 265 ¶¶ 253, 262) The plaintiffs claim that

> The ATTORNEY DEFENDANTS were associated with the MERCY enterprise through their association with (1)

10. Although Lomass is listed as a defendant in the captions for each of Counts I and II, it is not so named in the actual text of the allegations wherein the defendants against whom the count is directed are specified. (*See* # 265 ¶¶ 234, 241)

RUNNERS; (2) CLINIC OPERA-TORS; (3) the processing of false claims and demands upon insurance carriers seeking compensation for allegedly injured parties; and/or (4) by making demands for compensation from insurance companies, including the PLAINTIFFS, while simultaneously concealing their knowledge of, and participation in, the RUNNER PATIENT/CLIENT purchasing kickback scheme described throughout this Amended Complaint.

Second Amended Complaint # 265 ¶¶ 251, 260.

It is further contended that "[t]his association had an identifiable structure, with each of the DEFENDANTS listed...undertaking a specific segment of function and responsibility to carry out and facilitate the affairs of the enterprise." (# 265 ¶¶ 252, 261) Finally, the conduct described is purportedly indictable under the federal mail fraud statute, with the plaintiffs being "persons" injured in their business or property by virtue of the violations of 18 U.S.C. § 1962. (# 265 ¶¶ 254, 263)

In the next two claims, Counts V and VI, the plaintiffs allege that defendants Perez, Javier, Blue Eagle, S. Srey, Lopes, Linda Whittemore (hereinafter "Whittemore")[11], H. Alford and Cutler were members of the SPMC Enterprise Group. The plaintiffs assert that these defendants conducted the affairs of SPMC, an enterprise affecting interstate commerce, "through an ongoing pattern of racketeering activity." (# 265 ¶¶ 268, 273–74, 277, 282–83) It is alleged that the named defendants "routinely delivered bills for medical services and expenses from SPMC via the U.S. Mails" to the plaintiffs. (# 265 ¶¶ 271, 280 [12]) The plaintiffs claim that

The ATTORNEY DEFENDANTS were associated with the SPMC enterprise through their association with (1) RUNNERS; (2) CLINIC OPERA-TORS; (3) the processing of false claims and demands upon insurance carriers seeking compensation for allegedly injured parties; and/or (4) by making demands for compensation from insurance companies, including the PLAINTIFFS, while simultaneously concealing their knowledge of, and participation in, the RUNNER PATIENT/CLIENT purchasing kickback scheme described throughout this Amended Complaint.

Second Amended Complaint # 265 ¶¶ 269, 278.

It is further contended that "[t]his association had an identifiable structure, with each of the DEFENDANTS listed...undertaking a specific segment of function and responsibility to carry out and facilitate the affairs of the enterprise." (# 265 ¶¶ 270, 279) Finally, the conduct described is purportedly indictable under the federal mail fraud statute, with the plaintiffs being "persons" injured in their business or property by virtue of the violations of 18 U.S.C. § 1962. (# 265 ¶¶ 272, 281)

In Counts XI and XII, the plaintiffs assert that "[t]he DEFENDANTS in the HIGHLANDS ENTERPRISE GROUP...conspired with one another to violate 18 U.S.C. § 1962(c), and thereby violated 18 U.S.C. § 1962(d)" and, as a result, Liberty and Metropolitan were injured in their business or property. (# 265 ¶¶ 334–35, 338–339) The identical claims are alleged against the defendants in the Mercy Enterprise Group in Counts XIII and XIV, and against the defendants in the

---

11. Whittemore is identified as an individual last known to have resided in Massachusetts. (# 265 ¶ 127)

12. In Count VI it is alleged that these bills were delivered from SPMC "through the billing agent, LOMASS." (# 265 ¶ 280) This is not alleged in Count V. (# 265 ¶ 271)

SPMC Enterprise Group in Counts XV and XVI. (# 265 ¶¶ 342, 345–46, 349–50, 353–54)

In Count XIX, Liberty avers that it is an enterprise that affects interstate commerce. (# 265 ¶ 365) The heart of this innocent victim enterprise claim is the allegation that

The DEFENDANTS in HIGH-LANDS ENTERPRISE GROUP as plead (sic) in this Amended Complaint have joined in a conspiracy with each other and other persons, whose identities are presently unknown to the PLAINTIFFS, for the purpose of conducting or participating, directly or indirectly, in LIBERTY'S affairs, through an ongoing pattern of racketeering activity.

Second Amended Complaint # 265 ¶ 366.

As a consequence of this violation of 18 U.S.C. § 1962(c), Liberty asserts that it has been injured in its business or property. (# 265 ¶ 367) Metropolitan advances the same allegations on its own behalf against the defendants in the Highlands Enterprise Group in Count XX. (# 265 ¶¶ 369–371) Moreover, identical claims of innocent victim enterprise violation of 18 U.S.C. § 1962(c) are alleged against the defendants in the Mercy Enterprise Group in Counts XXI and XXII and against the defendants in the SPMC Enterprise Group in Counts XXIII and XXIV. (# 265 ¶¶ 373–75, 377–79, 381–383, 385–387) Further, all of the defendants are alleged to have conspired to commit an innocent victim enterprise violation of 18 U.S.C. § 1962(c) against Liberty and Metropolitan respectively in Counts XXVII and XXVIII. (# 265 ¶¶ 397–99, 401–03)

Turning to the state law claims, in Count XXIX Liberty contends that all of the defendants

conspired to defraud LIBERTY, and agreed to combine together to accomplish an unethical, unfair, deceptive, wrongful and illegal purpose. Joining the DEFENDANTS were certain unknown persons who, acting with the DEFENDANTS, had the ability to cause LIBERTY to pay for fraudulent medical expenses, which the DEFENDANTS would not have been able to accomplish acting alone.

Second Amended Complaint # 265 ¶ 405.

As a result of this purported conspiracy, Liberty contends that it was induced to pay the defendants for a variety of false insurance claims. (# 265 ¶ 406) Metropolitan alleges the same civil conspiracy claim against all of the defendants in Count XXX. (# 265 ¶¶ 409–10) In addition, the plaintiffs bring the identical civil conspiracy claim against the Highlands Enterprise Group in Counts XXXI and XXXII, the Mercy Enterprise Group in Counts XXXIII and XXXIV, and the SPMC Enterprise Group in Counts XXXV and XXXVI. (# 265 ¶¶ 413–14, 417–18,421–22, 425–26, 429–30, 433–34)

In Counts XXIX and XXXX Liberty and Metropolitan aver that all of the defendants engaged in common law deceit, i.e., knowingly made material misrepresentations of fact to the insurance companies upon which they reasonably relied in making payments on false insurance claims. (# 265 ¶¶ 445–49, 452–56) Next in Counts XXXXI and XXXXII, the plaintiffs assert that the defendants, by submitting false bills to the insurance companies for payment, engaged in unfair and deceptive practices in violation of Massachusetts General Laws chapter 93A. (# 265 ¶¶ 459–61, 465–67) Finally in Count XXXXIII and XXXXIV Liberty and Metropolitan allege that all of the defendants interfered with the insurance companies' advantageous business relationships with their insureds and policyholders.

With the review of the claims alleged against Cutler completed, a discussion of the merits of the motion to dismiss is in order. Only those arguments that are necessary to resolve the dispositive motion shall be addressed.

### IV. Discussion

### A. The Law

The substantive RICO counts serve as the cornerstone of the second amended complaint and thus are the place to begin the analysis. The pertinent statutory provision provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprises's affairs through a pattern of racketeering activity or collection of unlawful debt.

Title 18 U.S.C. § 1962(c).

■ In order to survive a Rule 12(b)(6) motion and

> [t]o state a claim under § 1962(c), a plaintiff must allege each of the four elements required by the statute: 1) conduct; 2) of an enterprise; 3) through a pattern; 4) of racketeering activity.

*Libertad v. Welch*, 53 F.3d 428, 441 (1 Cir.1995), citing *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 41 (1 Cir.1991)(further citation omitted).

■ More specifically,

> For an individual defendant to be liable for a RICO substantive violation under § 1962(c), with [Highlands or Mercy or SPMC or Alford & Bertrand or Liberty or Metropolitan] as the enterprise, the evidence must be sufficient for the jury to find that (1) [Highlands or Mercy or SPMC or Alford & Bertrand or Liberty or Metropolitan] was an enterprise affecting interstate or foreign commerce, (2) that the defendant under consideration associated with the enterprise, (3) that this defendant participated in the conduct of the enterprise's affairs, and (4) that this defendant's participation was through a pattern of racketeering activity.

18 U.S.C. § 1962(c).

*Aetna Casualty Surety Company v. P & B Autobody*, 43 F.3d 1546, 1558 (1 Cir.1994).

### B. RICO Claims in Which the Clinics Are the Enterprises

Cutler argues that the second amended complaint is deficient in that there is no allegation that he was "employed by or associated with" the medical clinic enterprises pled in Counts I–VI. Cutler initially takes the position that in these counts the plaintiffs were attempting to plead "associations-in-fact" enterprises. *See United States v. Console*, 13 F.3d 641, 649–52 (3 Cir.1993). Liberty and Metropolitan deny this contention, claiming the enterprises are the medical clinics.[13] *See* Plaintiff's Memorandum of Reasons in Opposition to Defendant Cutler's Motion to Dismiss (# 348) at p. 8. For purposes of this motion to dismiss, the plaintiffs' position must be accepted. However, both the second amended complaint and the plaintiffs' memorandum are indeed quite confusing in this regard.

---

**13.** In certain paragraphs in Counts I and II, Liberty and Metropolitan do allege that "[t]he DEFENDANTS listed in this Count, are associated with, or employed by, HIGHLANDS." (# 265 ¶¶ 238, 246). The same is true with respect to the subsequent four counts. Cutler, as an attorney defendant, is clearly alleged to have associated with the named enterprises, Mercy (Counts III and IV) and SPMC (Counts V and VI). (# 265 ¶¶ 251, 256, 260, 264, 269, 273, 278, 283)

■ Cutler's primary argument, however, is that nothing alleged in the second amended complaint supports a suggestion he "conducted" or "participated in the conduct of" the affairs of the three medical clinics. The Eighth Circuit has held that in order to meet this element, the plaintiff must demonstrate that "[a] defendant's participation must be in the conduct of the affairs of a RICO enterprise, which ordinarily will require some participation in the *operation or management* of the enterprise itself." *Bennett v. Berg*, 710 F.2d 1361, 1364 (8 Cir.1993)(*en banc*) (emphasis added; citation omitted); *cert. denied sub nom. Prudential Insurance Company of America v. Bennett*, 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). In the case of *Reves v. Ernst & Young*, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), the Supreme Court approved the use of what by then was named the "operation or management test," and in so doing, explained that:

Once we understand the word "conduct" to require some degree of direction and the word "participate" to require some part in that direction, the meaning of § 1962(c) comes into focus. In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs. Of course, the word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but some part in directing the enterprise's affairs is required. The "operation or management" test expresses this requirement in a formulation that is easy to apply.

*Reves v. Ernst & Young*, 507 U.S. 170, 179, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993).

The Supreme Court continued to flesh out the "operation or management" test more fully:

We agree that liability under § 1962(c) is not limited to upper management, but we disagree that the "operation or management" test is inconsistent with this proposition. An enterprise is "operated" not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management. An enterprise also might be "operated" or "managed" by others "associated with" the enterprise who exert control over it as, for example, by bribery.

*Reves*, 507 U.S. at 184, 113 S.Ct. 1163.

This is a case where the *Reves* analysis would apply since the attorney defendants are parties outside the asserted enterprises. *See United States v. Owens*, 167 F.3d 739, 753–4 (1 Cir.1999). In other words, there are no allegations that the attorneys were employed by or were otherwise somehow insiders in the medical clinics. As more fully explained by the First Circuit:

*Reves* differs from the present case in that it addressed the civil RICO liability of an independent adviser outside of the RICO enterprise's chain of command. The Supreme Court held in *Reves* that an accounting firm employed by the enterprise could not be held civilly liable under RICO for preparing an inaccurate accounting statement as it had not "participate[d] in the operation or management of the enterprise itself." *Id.* Respecting *Reves*, we have said:

Special care is required in translating *Reves'* concern with "horizontal" connections—focusing on the liability of an outside adviser—into the "vertical" question of how far RICO liability may extend within the enterprise but

down the organizational ladder. In our view, the reason the accountants were not liable in *Reves* is that, while they were undeniably involved in the enterprise's decisions, they neither made those decisions nor carried them out; in other words, the accountants were outside the chain of command through which the enterprise's affairs were conducted.

*United States v. Oreto*, 37 F.3d 739, 750 (1st Cir.1994).

We have held, post-*Reves*, however, that a defendant who is "plainly integral to carrying out" the enterprise's activities may be held criminally liable under RICO. *See id.*

*United States v. Shifman*, 124 F.3d 31, 36 (1 Cir.1997).[14]

A review of the allegations of the second amended complaint does not reveal such facts as would satisfy this "operation or management" test, i.e., that would suggest that Cutler exercised control over Highlands, Mercy, or SPMC. Cutler is not identified as a clinic operator, nor are there any assertions that he was somehow involved in the management of the clinics. Moreover, the pattern of conduct as illustrated by the chart in paragraph 3 reflects no purported payments or kickbacks by or between the attorneys and the clinics. Indeed, absent certain mailings, there apparently is no direct relationship between the attorney and the enterprises. Liberty and Metropolitan argue that Cutler operated the medical clinics by virtue of allegedly "placing or causing to be placed into the U.S. mails, false and fraudulent medical records, bills, and other documents in support of fraudulent insurance claims", this conduct does not reflect either "direction" or "control" over the enterprises.[15]

The plaintiffs point to the allegations in paragraphs 87–8 as examples of how Cutler "conducted the affairs of the medical clinics enterprises", these paragraphs alleging facts upon information and belief about the attorneys' relationships with the runners. Similarly, paragraphs 98–9 allege only that the attorneys knew that their participation in the clinic-runner-attorney fraud scheme would cause the plaintiffs harm. Again, paragraph 107 relates how the plaintiffs were allegedly injured in their businesses. Next, in paragraph 110, it is alleged that the scheme flourished in part due to the attorneys' efforts to conceal the kickbacks. Whether viewed separately or as a whole, these facts quite simply do not show that Cutler directed some aspect of the medical clinics' affairs. In other words, such facts as are alleged do not suggest that the attorneys either made decisions for the enterprises or carried them out. *See Shifman*, 124 F.3d at 36.

The plaintiffs also rely upon the allegations in paragraphs 212–232. These paragraphs give a general overview of the scheme in which Cutler purportedly participated. Again, however, apart from broad allegations, i.e., "[o]n information and be-

---

**14.** In the *Shifman* case, the statement, citing *Oreto*, "...that a defendant who is 'plainly integral to carrying out' the enterprise's activities may be held criminally liable under RICO" (*Shifman*, 124 F.3d at 36) must be understood in the context of the argument which the defendants made in *Oreto*, i.e., that as "mere employees," they did not participate in the "operation or management" of the enterprise. *Oreto*, 37 F.3d at 750. Thus, in making the statement, the First Circuit was referring to insiders in the enterprise rather than outsiders such as defendant Cutler is in the instant case.

**15.** Cutler notes that "the complaint does not even contain a single mailing (or any other connection—no matter how tenuous) between Mr. Cutler and Mercy Medical Clinic." *See* Defendant Corey Cutler's Reply # 363 at 8 n.13

lief, the ATTORNEY DEFENDANTS intentionally used, and regularly associated with, runners including but not limited to the RUNNER DEFENDANTS to conduct the affairs of the enterprise and accomplish the scheme or artifice to defraud", there are no facts alleged to show how Cutler exerted control over the medical clinics so as to meet the "operation or management" test. It is well to recall the words of the Eighth Circuit in the *Bennett* case, 710 F.2d at 1364, when the Court laid down the "operation or management" test. The Court wrote that "[m]ere participation in the predicate offenses listed in RICO, even in conjunction with a RICO enterprise, may be insufficient to state a RICO cause of action." *Id.* Succinctly put, plaintiffs' allegations, to the extent that they rely on the clinics as enterprises, do not amount to more than allegations of mere participation in the predicate offenses in conjunction with the enterprise. More is required.

Accordingly, the RICO claims for substantive violations of § 1962(c), Counts I–VI, must fail consequent to inadequate pleading with respect to the element that Cutler "participated in the conduct of the enterprise[s]' affairs". The concomitant § 1962(d) conspiracy claims, Counts XI–XII, must also be dismissed for the same reason.[16]

### C. RICO Claims in Which the Insurance Companies Are Enterprises

■ Turning to the innocent victim enterprise claims, the plaintiffs contend that Cutler conducted or participated in the conduct of the affairs of Liberty and Met-ropolitan by inducing them "be (sic) virtues (sic) of submission of false and fraudulent medical bills, records, and reports" to pay claims. (Plaintiffs' Memorandum #348 at 11) Cutler argues that under the *Reves* and *Aetna* cases, this is not enough to satisfy the operation or management test.

In *Reves*, the Supreme Court observed that an outsider could "exert control" over an enterprise "as, for example, by bribery." *Reves*, 507 U.S. at 184, 113 S.Ct. 1163. When one pays a bribe to an officer of a corporation alleged to be the enterprise and the *quid pro quo* for the payment is that the officer causes the corporation to act in a way in which it would not have done otherwise, the person paying the bribe has exerted control over the corporation/enterprise. But when does exerting control end? By submitting a false claim to an insurance company, does a defendant "exert control" over the company because the defendant causes the company to do something it would not otherwise have done, i.e., pay the false claim? To answer that question, one has to analyze closely the First Circuit's decision in *Aetna Casualty Surety Company*, 43 F.3d 1546, 1558, in which the Court interpreted the "operation or management" test enunciated in the *Reves* decision. Because how that decision is construed will determine whether allegations of the second amended complaint in this case are sufficient to meet the "operation or management test" as to defendant Cutler, a review of the facts of that case is necessary before discussing the legal principles which the Court explicated.

---

**16.** The First Circuit has written:

Liability on this theory [§ 1962(d)] is proved against a defendant by showing (1) the existence of enterprise affecting interstate commerce, (2) that the defendant knowingly joined the conspiracy to participate in the conduct of the affairs of the enterprise, (3) that the defendant participated in the conduct of the affairs of the enterprise, and (4) that the defendant did so through a pattern of racketeering activity by agreeing to commit, or in fact committing, two or more predicate offenses.

*Aetna*, 43 F.3d at 1561 (citation omitted).

In *Aetna*, one of the theories of liability was that the plaintiff, Aetna Casualty Surety Company, was an enterprise and that the defendants participated in the affairs of Aetna, the enterprise, through a pattern of racketeering. *Aetna*, 43 F.3d at 1558. The defendants were a body shop, the owner and employees of the body shop, and relatives and friends of the owners and employees of the body shop who submitted false claims to Aetna for supposed repairs done by the body shop on certain vehicles. In addition, two Aetna appraisers were named as defendants. These appraisers "covered the area" where the body shop was located, did a number of the appraisals on the fraudulent claims, and "submitted false claims to help [the other defendants] defraud Aetna." *Aetna*, 43 F.3d at 1552.

In discussing the question of whether the defendants (other than the two Aetna appraisers) participated in the conduct of the affairs of Aetna, the First Circuit wrote the following four paragraphs:

▪ Appellants argue that no reasonable jury could have found that the appellants "participated directly or indirectly in the conduct of the enterprise's affairs" because the defendants did not "participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993).

▪ Contrary to the appellants' assertion, there was sufficient evidence for a reasonable jury to find that the defendants' activities met the definition of "participation" adopted by the Supreme Court in *Reves*, which is known as the "operation or management" test. *Id.* at ——, 113 S.Ct. at 1172. Appraising allegedly damaged vehicles and investigating, processing, and paying automobile insurance claims are vital parts of Aetna's business. By acting with purpose to cause Aetna to make payments on false claims, appellants were participating in the "operation" of Aetna.

▪ The Supreme Court in *Reves* interpreted the phrase "conduct of the enterprise's affairs" to indicate a "degree of direction," which the court described as taking "some part in directing the enterprise's affairs." *Id.* at 179, 113 S.Ct. at 1170. The evidence was sufficient to support a finding that the individual Arsenal defendants' activities affected, in a material degree, the direction of Aetna's affairs by employees of Aetna. Appellants' activities caused Aetna employees having authority to do so to direct that other employees make payments Aetna otherwise would not have made. The Court in *Reves* emphasized that, as in this case, the defendants' "participation" could be "indirect" in the sense that persons with no formal position in the enterprise can be held liable under § 1962(c) for "participating in the conduct of the enterprise's affairs." *Id.* The evidence was sufficient to support a finding that each of the appellants participated in the conduct of Aetna's affairs in this way.

▪ Moreover, in *Reves* the court expressly recognized that "an enterprise also might be operated or managed by others 'associated with' the enterprise who exert control over it as, for example, by bribery." *Id.* at 185, 113 S.Ct. at 1173. When viewed in the light most favorable to the plaintiff, in support of the verdict in this case, the evidence supports a finding that appellants caused the Aetna appraisers to approve false claims and conduct their appraisals in a manner contrary to Aetna's business practices and caused Aetna to pay out large sums of money on false claims. The evidence was sufficient to support a finding that appellants exerted control over the enterprise, if not by bribery

(the example given by the Court in *Reves*), then at least by other methods of inducement. Since a reasonable jury could find that the appellants exerted some control over Aetna and took part in directing some aspect of the enterprise's affairs, the appellants' actions could be found to have satisfied the "operation or management" test.

*Aetna*, 43 F.3d at 1559–60.

Reading the second and third paragraphs, it could very well be said that by submitting false claims to an insurance company, a defendant causes an insurance company to pay claims which it otherwise would not have paid and thus, participates in the operation of the company. The statement at the end of the first paragraph could not be clearer, i.e., "[b]y acting with purpose to cause Aetna to make payments on false claims, appellants were participating in the "operation" of Aetna." *Aetna*, 43 F.3d at 1559. Similarly, in the third paragraph, the Court's statement that the defendants "participated in the conduct of Aetna's affairs" by "caus[ing] Aetna employees having authority to do so to direct that other employees make payments Aetna otherwise would not have made," *id.*, is to the same effect.[17]

In fact, in a Report and Recommendation in another case, I relied on the statement in the second paragraph to hold that a chiropractor who engaged in a scheme to enrich himself and the clinics he founded by submitting false claims for medical treatment to insurance companies partici-

pated in the operation of those companies. *Metropolitan Property and Casualty Insurance Company v. Phamara Uong, Etc., et al.*, Civil Action 98–11185–RCL, Report and Recommendation at p. 18 (February 26, 1999).[18] In that case, there was no allegation that any employees or anyone else associated with the insurance companies had been compromised.

In the instant case, Cutler argues strenuously that the *Metropolitan* decision is erroneous because in order to participate in the conduct of the affairs of an innocent enterprise, a defendant must somehow corrupt an employee of the corporation, or the innocent enterprise, i.e., through bribery or otherwise, to cause that employee to do something in the corporation which would not have done but for the corruption. There is clearly language in the fourth paragraph of the *Aetna* opinion holding that this would be sufficient to establish the "operation and control" test, i.e.,

When viewed in the light most favorable to the plaintiff, in support of the verdict in this case, the evidence supports a finding that appellants *caused the Aetna appraisers to approve false claims and conduct their appraisals* in a manner contrary to Aetna's business practices and caused Aetna to pay out large sums of money on false claims. The evidence was sufficient to support a finding that *appellants exerted control over the enterprise, if not by bribery (the example given by the Court in Reves), then at least by other methods of inducement.*

---

**17.** I do not read "Aetna's employees having authority to do so" as referring to the appraisers who were in on the scam, because if the employees were the appraisers, there would be no real difference between the analysis in paragraphs 3 and 4. The use of the word "moreover" at the beginning of paragraph 4 denotes to me that the writer was intending to say something over and above what was said in the previous paragraph, not just to reiterate what was there. However, I admit that if

the reference to the "employees" is not a reference to the appraisers, there is little difference between what is said in paragraphs 2 and 3, and what is said in paragraph 3 is no more than a further elucidation what was said in paragraph 2.

**18.** The Report and Recommendation was approved by Lindsay, D.J. on March 25, 1999.

*Aetna,* 43 F.3d at 1560 (emphasis supplied).

The question then becomes whether *Aetna* stands for the proposition that in order to be liable under "innocent enterprise" theory, there must be some sort of compromise of the enterprise's employees through bribery or "other methods of inducement." *Id.* Or, alternatively, is control through bribery or "other methods of inducement" merely one, but not the only method of satisfying the "operation or management" test.

Although I admit that the matter is not free from doubt, I am of the view that I correctly decided the *Metropolitan* case and that the *Aetna* case can fairly be read as holding that the "operation or management" test may be met by proof that the defendants participated in the operation of the insurance companies by acting in such a manner as to cause them to pay false claims which would not have otherwise been paid were it not for the defendants' acts. It is not a *sine qua non* of liability that an employee of the innocent enterprise be a knowing participant in the racketeering activity. It appears that the Court of Appeals for the Eleventh Circuit has so read the *Aetna* case by summarizing its holding as follows:

> Outsiders may exert control over an enterprise's affairs through illegal means sufficient to satisfy *Reves'* requirements. *Aetna Cas. Sur.Co. v. P & B Autobody,* 43 F.3d 1546, 1559–60 (1 Cir.1994) (auto repair shops, their employees, and insurance claimants who submitted fraudulent claims to insurance company caused the insurance company to pay out large sums of money and thus exerted sufficient control over affairs of insurance company to satisfy the dictates of *Reves*).

*United States v. Castro,* 89 F.3d 1443, 1452, n. 5 (11 Cir.1996).

To repeat, although I admit the matter is not free from doubt, it does not appear "...beyond doubt that the plaintiff[s] can prove not set of facts in support of [its innocent enterprise] claims," *Conley,* 355 U.S. at 45–6, 78 S.Ct. 99, that the defendants, including Cutler, participated in the operation or management of the plaintiffs through a pattern of racketeering activity by submitting fraudulent claims which the plaintiffs would not have paid were it not for the activity. Evidence that corrupted employees of the plaintiffs were involved is not required. Counts XIX–XXIV and XXVII–XXVIII are sufficient to withstand Cutler's motion to dismiss.

## V. Recommendation

For all the reasons stated, I RECOMMEND that Defendant Corey Cutler's Motion To Dismiss The Second Amended Complaint (# 335) be ALLOWED to the extent that the defendant Cutler is named in Counts I–VI, IX–XVI and XXXXV–XXXXVI and DENIED as to Counts XIX–XXIV and XXVII–XXVIII. I FURTHER RECOMMEND that the Defendant Corey Cutler's Motion To Dismiss The Second Amended Complaint (# 335) be DENIED without prejudice as to Counts XXIX–XXXVI and XXXIX–XXXXIV, the state law claims. Since discovery shall go forward on the "innocent enterprise" RICO counts as against Cutler, and the scope of discovery is the same regardless of the presence in the case of the state law claims, the question of the merits of the state law claims should be deferred until the close of discovery in the interests of judicial economy.

## VI. Review by the District Judge

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrate [Judge]s in the United States District Court for the District of Massachusetts, any party who

objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. *See Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1 Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–379 (1 Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1 Cir.1983). *See also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

May 9, 2000.