**INTERNATIONAL PAPER COMPANY, Plaintiff,**

v.

**FARM CREDIT CORPORATION, Defendant.**

**Civ. No. 88–0704 (JP).**

United States District Court, D. Puerto Rico.

March 22, 1991.

Edgardo Colón Arrarás, Goldman, Antonetti, Ferralloli, Axtmayer and Hertell, Santurce, Puerto Rico, for plaintiff.

Jaime Brugueras, Ramírez & Ramírez, Hato Rey, Puerto Rico, for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

This case arises from a series of deliveries plaintiff made to April Agro Industries, Inc. ("April Agro"), in March and April of 1986, based on a $300,000.00 line of credit plaintiff granted to April Agro during that same period of time. Plaintiff International Paper claimed damages in the amount of $296,491.89 against defendant Corporación de Crédito Agrícola ("CCA"). The case went to trial on March 12, 1991. On March 14, 1991, this Court orally granted defendant's motion for a directed verdict. We further elaborate on the Court's oral ruling.

■ The standard for granting a motion for directed verdict is based upon the weight and sufficiency of the evidence. The Court must evaluate whether the evidence is sufficient to create an issue of fact for the jury. *See* 9 Wright & Miller, *Federal Practice and Procedure* § 2524 (1971). In order to grant the motion, the Court must conclude that the evidence must permit thoughtful factfinders to reach but one reasoned conclusion. *Wagenmann v. Adams,* 829 F.2d 196, 200 (1st Cir.1987). In making this determination, the Court cannot weigh the evidence or pass on the credibility of witnesses. Furthermore, all evidence and the inferences reasonably flowing therefrom must be viewed in the light most favorable to the nonmovant. However, a "mere scintilla" of evidence is not enough to forestall a directed verdict. *Fashion House, Inc. v. K–Mart Corp.,* 892 F.2d 1076 (1st Cir. 1989); *Desfosses v. Wallace Energy, Inc.,* 836 F.2d 22 (1st Cir.1987). The First Circuit's "scintilla of evidence" standard was reaffirmed by the United States Supreme Court in *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addition, *Anderson* held that a

judge must consider substantive evidentiary standards that apply to the case in determining whether the plaintiff has produced sufficient evidence to warrant submission of the issue to the jury.

In this case, the plaintiff claims that it was misled into believing that the defendant would pay for the shipments of cartons it delivered to April Agro during the months of March and April of 1986. Plaintiff argues that the actions and conduct of CCA induced it to grant a $300,000.00 line of credit to April Agro and deliver this merchandise, especially pointing out the fact that plaintiff was paid $40,150.30 on April 3, 1986, and $49,106.72 on April 15, 1986. According to the relevant law, the plaintiff must show that a binding offer in the form of a promise was made, and that the promise was definite and certain so that the defendant should have reasonably foreseen that this promise would have induced reliance. *Santoni v. Federal Deposit Insurance Corp.*, 677 F.2d 174 (1st Cir. 1982). In other words, a directed verdict can only be granted if the plaintiff has failed to produce sufficient evidence to show that there was a binding offer in the form of a promise, and the actions of the defendant reasonably led to reliance on that promise. After carefully considering the plaintiff's evidence presented to the jury in light of the applicable law, we conclude that the plaintiff has failed to produce sufficient evidence to warrant submission of this case to the jury.

■ According to the First Circuit's interpretation of Puerto Rico's adoption of the doctrine of promissory estoppel through judicial decisions, the first essential element of promissory estoppel is a binding offer in the form of a promise. This promise must be definite and certain so that the promisor should reasonably foresee that it will induce reliance by the promisee or a third party. *Santoni*, 677 F.2d at 179 (1st Cir.1982). Viewing the facts of this case in the light most favorable to the plaintiff, we cannot conclude that there was sufficient evidence to show that there was 1) a binding offer that was definite and certain; and 2) plaintiff's rea-

sonable reliance that CCA would pay for any merchandise it sold to April Agro.

The plaintiff's main witness, Barto Bover Irizarry, who, as a sales representative for GT Enterprises, was plaintiff's representative in Puerto Rico, testified that many preliminary meetings were held in the fall of 1985 in order to arrange a deal whereby International Paper would sell cartons to April Agro for the 1986 harvest season, from around February to April of 1986. After many of these meetings, Mr. Bover met with Francisco de Jesús Gotay, President of CCA. Mr. Bover received a letter from Mr. de Jesús, dated December 2, 1985, stating that disbursements for April Agro were part of the Loan Agreement between April Agro and CCA, and that such purchases would be "taken care of following the established norms." *See* Plaintiff's Exhibit 10. A further letter was sent to the plaintiff, International Paper, from the President of April Agro, Dr. Sella, stating the specific conditions which constituted "established norms" under the Loan Agreement between April Agro, Banco de Ponce and CCA. *See* Joint Exhibit I. These established norms were described as follows:

(1) Present to "Corporación de Crédito" Agrícola complete documentation on:
  (a) Approved check requisition
  (b) Approved bill (INvoice) [sic]
  (c) Approved P.O.
  (d) Approved receiving documents
      (Conduce)

for its approbation, together with other payments to suppliers with a processing time—one (1) week more or less.

(2) Present certification, including other payments, thoroughly revised by the "Corporación de Crédito Agrícola" to the Cash Flow situation, and thoroughly approved with a processing time—one (1) week more or less.

This letter clearly put the plaintiff on notice that a rigorous procedure was set up under April Agro's loan agreement with Banco de Ponce, guaranteed by CCA.

Thus, this letter cannot constitute the definiteness and certainty which could be construed as an offer from CCA to pay for

items April Agro purchased from the plaintiff. Furthermore, during trial, the plaintiff presented no evidence, which, in addition to this letter, could constitute a binding offer by CCA to pay International Paper for items it delivered to April Agro. Although International Paper and Mr. Bover were on notice that these requirements needed to be met in order for the CCA to cover purchases under the Loan Agreement between April Agro and Banco de Ponce, the plaintiff failed to produce any evidence to show that it ensured that the conditions stated in the January 21, 1985 letter—specifically, the documentation on approved check requisition, approved bill, approved purchase order and approved receiving documents ("conduce")—were presented to CCA so that it could reasonably rely on CCA's granting credit to April Agro for its deliveries. Mr. Bover testified that he kept track of every approval, but he could not identify which invoices or bills of lading had been approved.

Also, the plaintiff never explicitly delineated to the jury which invoices and deliveries were unpaid and were the basis of plaintiff's claim for damages. The evidence offered to the jury related to plaintiff's claimed amount of damages was plaintiff's Exhibit 1, which consisted of a package of invoices and bills of lading, in no particular order. In addition, plaintiff presented no evidence to show the jury which of these invoices and bills of lading were paid and were therefore the basis of plaintiff's reliance on further payments by CCA. We note that this evidence, submitted as it was, was confusing to the jury, and could have been construed as contradictory, as some of the invoices are for prepaid deliveries or for deliveries falling outside the 1986 harvest season.

■ Mr. Bover further testified that a schedule was setup whereby he would go to CCA every Tuesday and Thursday for approval of documents. *See* Plaintiff's Exhibit 8. A perusal of this schedule reveals that the transaction between April Agro and the plaintiff was of such a nature that

the plaintiff provided the cartons to April Agro first, on credit, and expected to be paid after the merchandise had already been delivered, and the credit had already been granted. Although Mr. Bover stated that he went every Tuesday and Thursday for CCA approval of the invoices, he could not identify one invoice which had been approved, even though every invoice was supposedly shown to him and approved by the CCA. Another witness, Mr. Benjamin Soto, who was Vice President of Accounting and Finances at CCA throughout 1985, testified that under the Loan Agreement between April Agro, Banco de Ponce, and CCA, April Agro would send invoices to be approved, and if there were available funds within April Agro's line of credit, which was budgeted according to different items,[1] the invoice would be approved. Plaintiff provided the merchandise to April Agro first, and the procedure was set up so that April Agro's purchases from plaintiff, which were already delivered to April Agro on credit, would be paid for from the Banco de Ponce credit line *if* funds were still available in the credit line. Even when viewed in the light most favorable to the plaintiff, the fact that plaintiff was paid for certain deliveries was not enough to constitute reasonable reliance on further payments when the plaintiff made the deliveries first, expecting payment afterwards, if sufficient funds were available in the credit line, and the plaintiff did not ensure that the established norms were being followed as to each delivery.

We note that at the Initial Scheduling Conference in this case, the plaintiff was ordered by this Court to produce all the documents required by the established norms, including the approved check requisition, the purchase order, and the approved receiving documents ("conduce"), as well as a summary list of each invoice, check requisition, purchase order, and conduce that formed the basis for the plaintiff's claim, and all certifications referred to in the established norms. *See* Docket # 10 at page 2. The plaintiff never com-

---

1. The parties have stipulated that the "cartons and sacks" line item for payments, which included payments to plaintiff, had been exhausted by December, 1985.

plied with this Order and has not produced such evidence for trial. Thus, because the plaintiff failed to produce sufficient evidence to show that it reasonably relied on any actions of CCA, we are compelled to grant the directed verdict motion.

■ We are also compelled to grant defendant's motion because CCA is a public corporation, and as an arm of the government it is entitled to the benefits of sovereign immunity. An offshoot of sovereign immunity is government immunity from estoppel. Annotation, "Modern Status of Applicability of Doctrine of Estoppel Against Federal Government and its Agencies," 27 ALR Fed. 702. In the ordinary case of equitable estoppel, the Supreme Court has usually refused to apply equitable estoppel against the government, so that a party cannot generally assert the misrepresentation of an official as the basis of a contract claim. *Falcone v. Pierce*, 864 F.2d 226 (1st Cir.1988) (citing *Federal Crop Insurance Corp v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947)). In this case of promissory estoppel, which we consider a "species" of equitable estoppel, *see* "Comment—Promissory Estoppel," 48 A.L.R.2d 1069, we conclude that the same considerations of sovereign immunity exist so that the plaintiff cannot assert promissory estoppel against the defendant, an arm of the Commonwealth of Puerto Rico, in the absence of the clear misrepresentation of fact, or in this case, a clear promise to pay, and reasonable reliance upon that misrepresentation or in this case, promise. *Cf. Heckler v. Community Health Services, Inc.*, 467 U.S. 51, 59–61, 104 S.Ct. 2218, 2223–25, 81 L.Ed.2d 42 (1984) (no estoppel against government possible in absence of existence of traditional elements of estoppel); *Phelps v. Federal Emergency Management Agency*, 785 F.2d 13 (1st Cir.1986) (discussing underlying considerations of sovereign immunity and public policy in refusal to apply equitable estoppel against government). *See also Infante v. Tribunal Examinador de Médicos de Puerto Rico*, 84 D.P.R. 308, 316–317 n. 6 (1961) (citing, *inter alia, Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947)).

Wherefore, in view of the foregoing the defendant's Motion for a Directed Verdict is hereby GRANTED.

IT IS SO ORDERED.