Carina CRUZ BERRIOS; Jorge Mejia Valle; Alex Cintron Piñero; Carmen Adorno Landrau; Luis Guzman Lugo; Yarima Marcucci Ramos; Ivonne Santiago Santiago; Nydia Del Toro Rivera; Samuel Monroig Garcia; Rafael Cortes Moran; Janine Santiago Collazo; Vivian Villarubia Velez; Mariel Piñero Santiago; and Rafael Santiago Aponte; Asociacion Ex–Alumnos San Juan Bautista, et al., Plaintiffs,

v.

**ACCREDITATION COUNCIL FOR GRADUATE MEDICAL EDUCATION; and David C. Leach, M.D., Executive Director et al., Defendants.**

Civil No. 00–1374(JAG).

United States District Court,
D. Puerto Rico.

July 17, 2002.

Eric M. Quetglas–Jordan, San Juan, PR, for plaintiff.

Ruben T. Nigaglioni, McConnell Valdes, San Juan, PR, Douglas R. Carlson, Wildman, Harrold, Allen & Dixon, Chicago, IL, for defendant.

### OPINION AND ORDER

GARCIA–GREGORY, District Judge.[1]

This is an action brought by Carina Cruz Berrios, Jorge Mejia Valle, Alex Cintrón Piñero, Carmen Adorno Landrau, Luis Guzman Lugo, Yarima Marcucci Ramos, Ivonne Santiago Santiago, Nydia Del Toro Rivera, Samuel Monroig Garcia, Rafael Cortes Moran, Janine Santiago Collazo, Vivian Villarubia Velez, Mariel Piñero Santiago, and Rafael Santiago Aponte, all of whom are alumni of the San Juan Bautista Medical School (hereinafter, "SJB"); the Asociación Ex–Alumnos San Juan Bautista (hereinafter, "Asociación Ex–Alumnos") (collectively, "plaintiffs") against Accreditation Council for Graduate Medical Education, (hereinafter, "ACGME").[2] Currently pending before the Court is ACGME's motion to dismiss pursuant to Rule 12(b)(6). (Docket No. 8.) For the reasons stated below, the Court grants ACGME's motion.

### FACTUAL BACKGROUND

ACGME evaluates and accredits medical residency programs throughout the United States. In March 1996, ACGME adopted new institutional requirements effective July 1, 1997, denying Resident Eligibility to students from medical schools not accredited by the Liaison Committee of Medical Examination ("LCME"). LCME does not accredit SJB. As a result, SJB students were denied ACGME Resident Eligibility upon graduation. On March 24, 2000, plaintiffs filed suit. (Docket No. 1.) The Complaint asserts four causes of action against ACGME: (1) a declaratory judgment ordering ACGME not to apply the new institutional requirements, which deny ACGME Resident Eligibility to any SJB medical student who was an SJB student between 1997 to 2000, and all SJB alumni who graduated prior to 1996; (2) a permanent injunction ordering ACGME to amend the new institutional requirements; (3) an award of reasonable attorney's fees pursuant to Rule 44.3(e) P.R.R.C.P.; and (4) a constitutional claim for race-based discrimination.

---

1. Mario Arroyo, a third year student at Tulane Law School, assisted in the research and preparation of this opinion.

2. On October 12, 2000, plaintiffs voluntarily dismissed their claims against defendant David C. Leach M.D., ACGME's Executive Director. (Docket No. 18.)

## DISCUSSION

### A. Motion to Dismiss Standard

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may not be dismissed unless it appears beyond doubt that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *See Brown v. Hot, Sexy, and Safer Prods., Inc.*, 68 F.3d 525, 530 (1st Cir.1995). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. *See Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Technology*, 950 F.2d 13, 22 (1st Cir.1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support her claim. *Id.* at 23 (*citing Correa–Martinez*, 903 F.2d at 52). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

### B. Applicable Law

Before turning to the merits of the parties' respective positions, the Court must first identify the applicable law. The plaintiffs urge the Court to apply Puerto Rico law that applies to this dispute. ACGME, on the other hand, argues that Illinois state law should apply.

▮ A federal court sitting in diversity must apply the choice of law rules of the forum state. *New Ponce Shopping Center v. Integrand Assurance Co.*, 86 F.3d 265, 267–68 (1st Cir.1996). Puerto Rico has adopted the "dominant or significant contacts" test laid out in the Restatement (Second) of Conflict of Laws. *Servicios Comerciales Andinos, S.A. v. General Electric Del Caribe*, 145 F.3d 463, 478–79 (1st Cir.1998). Thus, the laws of the jurisdiction with the most significant contacts with respect to the disputed issue will apply. *AM Capen's Co. v. American Trading & Prod. Corp.*, 74 F.3d 317, 320 (1st Cir.1996).

According to Section 188 of the Restatement (Second), absent a contractual choice of law, the following considerations should be taken into account when determining which jurisdiction's law should control: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. *See* Restatement (Second) of Conflict of Laws § 188 (1971).

▮ The Court finds that, under the dominant contacts test, Puerto Rico law should apply. ACGME revised its requirements for Resident Eligibility in Illinois. Nevertheless, the multiple plaintiffs in this case reside in Puerto Rico, while the members of ACGME reside in different states. ACGME caused the alleged injury in Puerto Rico; it performed accreditation in Puerto Rico; and from what the Court can discern in the record, the accreditation contract was entered with many different medical Schools in different States. (Docket No. 1.) Accordingly, Puerto Rico law will apply.

### C. Quasi Contract

ACGME enters into agreements with medical schools (like SJB) to endow them with accredited status. Since the students

and alumni are not parties to the ACGME–SJB agreement, they claim to have standing to bring suit through a quasi contract theory. ACGME, on the other hand, alleges that plaintiffs lack standing because it never entered any contract or agreement with them. Pursuant to Puerto Rico law, "obligations are created by law, by contracts, by quasi contracts, and by illicit acts and omissions." 31 L.P.R.A. § 5091. A quasi contract creates an enforceable obligation between a promisor and a third party. The plaintiffs must show that ACGME made a binding offer in the form of a promise, and that the promise was definite and certain, so that ACGME should have reasonably foreseen that this promise would have induced reliance. *International Paper Co. v. Farm Credit Corp.*, 760 F.Supp. 18 (D.P.R.1991).

■ Taking the facts in the light most favorable to the plaintiffs, the Court finds that ACGME did not make a binding offer to plaintiffs. As a result, they could not have had a reasonable expectation that ACGME's alleged promise would induce reliance. Plaintiffs allege that ACGME's prior grant of accreditation to SJB informed them that the school met quality requirements and, more importantly, that the accreditation itself represented a promise. This proposition is contrary to the accreditation agreement between ACGME and each of its accredited residency programs. Thus, reliance on such a claim is unreasonable.

ACGME is governed by its own set of standards and regulations, which allows it to grant or withdraw accreditation to residency programs as it deems appropriate.[3]

ACGME's accreditation decisions are not permanent; and it periodically revises its accreditation requirements. Nowhere in the Complaint have plaintiffs shown that ACGME made a "definite and certain" promise to maintain its admission standards or goals in place for any SJB student prior to the revision. The students have only shown that they relied on ACGME's accreditation of SJB. It is not sufficient that the performance of a contract may benefit a third person; the contract must have been entered into by the parties for the direct benefit of the third person. *Banco Central Corp. v. Yauco Homes, Inc.*, 135 D.P.R. 858, 864 (1994). Since ACGME never made any such representation or promise, it was therefore not reasonable for the students to expect that ACGME could never repeal or change its requirements.

A stranger to a contractual relationship (like the students) may demand the fulfillment of a contract successfully only if the contract contains a stipulation in his favor, and only if the stranger has given notice of acceptance to the person bound prior to revocation. 31. L.P.R.A. § 3374. Plaintiffs do not allege that the contract at issue contained a stipulation in their favor, nor do they allege that they gave ACGME any notice of "acceptance." The alleged terms upon which the plaintiffs relied are insufficiently definite and certain to constitute a basis for a quasi contract with ACGME.

Furthermore, reviewing courts invariably have afforded ACGME's accrediting determinations great deference, in light of its special expertise in determining professional competency requirements. *See, e.g.,*

---

**3.** To apply for ACGME accreditation, a medical school submits an accreditation application to ACGME. ACGME personnel thereafter review the application. ACGME renders an accreditation status decision ("provisional accreditation"; "full accreditation", "probationary accreditation", "accreditation denied" or "accreditation withdrawn"), which is of finite duration. ACGME periodically revises its accreditation standards to keep up with the changes in medical education. *See generally,* Exhibits 1 and 2 to *Initial Memorandum,* at 263–66 and 25–28, respectively.

*McKeesport Hospital v. ACGME,* 24 F.3d 519, 534 (3d Cir.1994). There is also strong public policy against approving students from schools that do not meet ACGME's requirements. *St. Agnes Hosp. of City of Baltimore, Inc. v. Riddick,* 748 F.Supp. 319, 59 USLW 2206 (4th Cir.1990). Even if plaintiffs have been harmed to some degree by the loss of accreditation of a residency program, the balance weighs in favor of ACGME and the public interest. *See Ambrose v. New England Ass'n of Schools and Colleges, Inc.,* 252 F.3d 488, 154 Ed. Law Rep. 745 (1st Cir.2001). For all the foregoing reasons, the students have no standing to bring suit against ACGME.

### C. *Asociación Ex–Alumnos' Standing*

In addition, Asociación Ex–Alumnos also lacks standing. "An association or similar representative organization may have standing if at least one of its members has standing in his or her own right, the interests served by the suit are pertinent to the mission of the organization, and relief does not require the presence of a member in the suit." *United States v. AVX Corp.,* 962 F.2d 108, 116 (1st Cir.1992). As established, plaintiffs have failed to prove that any of the students or graduates has standing in their own right because there was no contractual duty owed to them. Since *none of its individual members has standing,* Asociación Ex–Alumnos has no standing to bring suit.

### D. *Constitutional Claims*

Lastly, plaintiffs allege that ACGME's revised standards are unconstitutional because they discriminate against SJB students on the basis of their race or national origin. (Docket No. 1.) Plaintiffs must allege with specificity their claims of unconstitutionality. Fed.R.Civ.P. 8. Plaintiffs do not specify under which clause or article of the Constitution they are bringing suit. From what the Court can discern in the Complaint, plaintiffs probably seek to implicate either the Equal Protection Clause of the United States or Article II, § 1 of the Puerto Rico Constitution, which prohibits discrimination based on "race, color, sex, birth, social origin or condition, or political or religious ideas."

The Complaint, however, does not provide factual allegations to support how these actions were based on racially discriminatory considerations. In a motion to dismiss under Rule 12(b)(6), the Court's focus is "limited to the allegations of the complaint." *Litton Indus., Inc. v. Colón,* 587 F.2d 70, 74 (1st Cir.1978). In this case, the Complaint is devoid of facts that would minimally show how defendants' conduct was driven by a discriminatory intent. A plaintiff claiming a violation of civil rights "may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus." *Correa–Martínez v. Arrillaga–Belendez,* 903 F.2d 49, 53 (1st Cir.1990). The facts alleged "must specifically identify the particular instance(s) of discriminatory treatment and, as a logical exercise, adequately support the thesis that the discrimination was unlawful." *Id.* A careful reading of the Complaint shows that the plaintiffs have not alleged sufficient facts to show that ACGME's actions were based on any particular instances of racial discrimination targeting SJB. Since plaintiffs's have failed to meet the heightened pleading requirement established by the First Circuit for this type of action, the Court must dismiss their discrimination claim.

### E. *Supplemental State Claims*

Since no federal claims remain, the court dismisses all supplemental state claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## CONCLUSION

In view of the foregoing reasons, the Court grants ACGME's motion to dismiss. (Docket No. 8.) The Court dismisses plaintiffs' supplemental state law claims without prejudice, pursuant to 28 U.S.C. § 1367.

IT IS SO ORDERED.